**SWIFT & COMPANY, INC., Plaintiff,**

v.

**Frank WALKLEY, Commissioner of Agriculture and Markets of the State of New York, Defendant.**

**No. 73 Civil 4881.**

United States District Court,
S. D. New York.

Dec. 6, 1973.

William J. Condon, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendant; Mortimer Sattler, Asst. Atty. Gen., of counsel.

EDWARD WEINFELD, District Judge.

This action for a declaratory judgment and injunctive relief commenced by Swift & Company, Inc., a meat processor, against New York State's Commissioner of Agriculture and Markets in reality involves a conflict of policy between that state official and his counterpart in the federal government, the Secretary of the Department of Agriculture.[1] The conflict, not of recent origin, currently centers about a product, ALL AMERICAN FUN-LINKS, manufactured by plaintiff in link form and composed of meat, isolated soybean, flavorings, sweeteners, water and curing substances.

The product and its labelling come within the provisions of the Wholesome Meat Act.[2] Heretofore, on August 21, 1973, the United States Department of Agriculture approved the product and

---

1. Upon oral argument the state indicated that it intended to move to bring the Department of Agriculture into the litigation as a party.

2. 21 U.S.C. § 601 et seq. (1970).

its labelling as in conformity with that Act, and as such qualified for interstate shipment from plaintiff's federally inspected plants. The stamp of approval issued by the Department for the labelling reads "ALL AMERICAN FUN-LINKS, A Meat and Isolated Soy Protein Product, Hickory Smoke Flavoring Added." The product looks and tastes like a frankfurter; it is merchandised in a transparent package as are frankfurters. Plaintiff, in advertising the product, states that "they look and taste just like regular hot dogs." However, "ALL AMERICAN FUN-LINKS" do not comply with the standard of composition established by federal regulations for frankfurters, which require that the product contain no more than 2% isolated soy protein and no more than 10% added water.[3] Plaintiff's product contains 6.8% soy protein and 23.2% water.

Despite the federal government's approval, the defendant has banned the sale of ALL AMERICAN FUN-LINKS within New York State because it is misbranded under state law,[4] in that its label does not contain the words "imitation frankfurter." Plaintiff, in seeking relief against the state's action, urges that the federal government has preempted the field of labelling and packaging meat products produced in federally inspected plants; that the

state statute as applied is in direct contravention of the federal statute and is unconstitutional under the Supremacy Clause of the United States Constitution, Article VI, cl. 2. Pointing to the approval of its product by the United States Department of Agriculture, it relies upon that section of the Wholesome Meat Act which prohibits any state from imposing "[m]arking, labeling, packaging or ingredient requirements in addition to, or different than, those made under this chapter . . . with respect to articles prepared at any establishment under inspection . . . ."[5] However, this prohibition upon the states is only part of the section, which further provides, "but any State . . . may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the Secretary over articles required to be inspected . . . for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or *misbranded* and are outside of such an establishment . . . ."[6]

The federal Act's definition of a misbranded imitation food product, 21 U.S. C., section 601(n)(3),[7] is substantially identical to New York State's, already referred to. So, too, the state and federal regulations on the subject parallel one another.[8] Accordingly, there is no

---

3. C.F.R. § 319.180 (1973).

4. N.Y. Agriculture and Markets Law § 201(3) (McKinney's Consol.Laws, c. 69, 1972):

"Food shall be deemed to be misbranded:

. . . . .

"3. If it is an imitation of another food, unless its label bears the word 'imitation' and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

5. 21 U.S.C. § 678 (1970).

6. *Id.* (emphasis supplied).

7. It provides:

"The term 'misbranded' shall apply to any carcass, part thereof, meat or meat food product under one or more of the following circumstances:

. . . . .

"(3) if it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and immediately thereafter, the name of the food imitated . . . ."

8. 9 C.F.R. § 301.2(ii)(3) (1973) reads:

"*Misbranded.* This term applies to any carcass, part thereof, meat or meat food product under one or more of the following circumstances:

. . . . .

"(3) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and immediately thereafter, the name of the food imitated . . . ."

1 N.Y.C.R.R. § 301.2(ii)(3) (1960) reads:

"*Misbranded.* This term applies to any carcass, part thereof, meat or meat food

basis for any claim that the requirements of the state statutes and regulations at issue are "in addition to or different" from those imposed under the federal statute or applicable regulations. Thus, the state resists plaintiff's claim on the ground its product is misbranded under both the federal and state statutes, absent a statement indicating it is an imitation, and accordingly the state, consistent with 21 U.S.C., section 678, is exercising "concurrent jurisdiction." The blunt charge made by the state is that in view of the identical provisions of the federal and state laws and regulations, it is the federal government that has been derelict in its duty in permitting the misbranding of ALL AMERICAN FUN-LINKS. Upon the record on this motion, it appears that the defendant's position is one of substance and that the approval granted by the federal government to the labelling of plaintiff's product without any indication that it is an "imitation" is contrary to section 601(n)(3) of the Wholesome Meat Act, which specifically requires that imitation food products be labelled as such. That section, unlike other subsections of 601(n),[9] does not allow the Secretary of Agriculture to vary the standards specified therein.

■ The present controversy apparently has its genesis in a White House Conference on Food, Nutrition and Health held in 1969, which issued a report stating that the consuming public was resistant to the purchase of food products labelled "imitation," even though some such foods were nutritionally beneficial. Thus, on the instant motion, a Department of Agriculture official has submitted an affidavit which indicates its approval of plaintiff's label

was based not on a finding that it was not an imitation frankfurter, but rather upon acceptance of the view expressed by the White House Conference that "[c]onsumers are reluctant to purchase products labelled 'imitation' even though the products are very good and highly nutritious." Whether this lack of confidence in the public's buying judgment is merited, and if so, whether in consequence section 601(n)(3) should be amended is a matter for legislative rather than executive action; it does not justify the disregard of the statute by the Department of Agriculture. Furthermore, that the Department has ignored the standard set by section 601(n)(3) is not a ground for prohibiting a state from enforcing it, as it is permitted to do under section 678. Moreover, even if the matter were one that could be resolved by executive regulation, it is of significance that when, in October 1970, the Department of Agriculture acknowledged to New York State officials that it was in error in approving labels similar to the ones at issue in this case, it then stated it was "engaged in drafting proposed regulations to provide for the proper label identification of products of this nature."[10] Assuming that such a regulation could satisfy the statutory mandate, more than three years have elapsed and one has not been adopted.

■ In sum, since plaintiff's product is an imitation frankfurter and it is not labelled as such, it is misbranded under the Act and the state may require the product's label to meet the standard set forth in section 601(n)(3).

The cases cited by plaintiff do not, upon close analysis, support its position. In Armour & Co. v. Ball,[11] the court

---

product under one or more of the following circumstances:

.  .  .  .  .

"(c) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word 'imitation' and immediately thereafter, the name of the food imitated . . . ."

9. *See* 21 U.S.C. §§ 601(n)(5), (7), (8), (9), (10), (11), (12) (1970).

10. Plaintiff's Exhibit 3 to Affidavit of Lawrence R. Crowell, Letter of Oct. 21, 1970 from Kenneth M. McEnroe to Dr. L. R. Crowell.

11. 468 F.2d 76 (6th Cir. 1972), cert. denied, 411 U.S. 981, 93 S.Ct. 2267, 36 L.Ed.2d 957 (1973).

struck down a Michigan statute dealing with marking, labelling, packaging and ingredient requirements for sausage, as being in addition to or different than the federal standards under the Wholesome Meat Act. There, however, plaintiff's product was not "misbranded" within the definition of the federal Act, which is the case here; thus, the state had no concurrent jurisdiction under section 678. Moreover, the *Armour* court specifically recognized that "[p]ermissible concurrent enforcement by a state under Section 678 would apply only to meat food products that satisfy [the statutory] definition of misbranding." [12] In Rath Packing Co. v. Becker,[13] the court invalidated a California state statute pertaining to the accuracy of weight statements on meat package labels as being inconsistent with the federal statutory standard, even though the federal regulations implementing the latter were found to be void for vagueness. There, too, the product at issue was not "misbranded" within the definition of section 601(n). Finally, plaintiff cites a state court case, Meat Trade Institute, Inc. v. McLaughlin,[14] where a New York City ordinance prescribing certain labelling requirements for pork was invalidated on the ground that the field was preempted by federal and state statutes. The instant case, of course, involves a state statute, not a city ordinance. The *McLaughlin* decision does contain the unsupported dictum that a state has concurrent jurisdiction, under section 678, over federally inspected products "if they become adulterated or, if after leaving the federal establishment, they become misbranded, by virtue of obliteration, defacement or other alteration of the label." [15] The basis for the state court's interpretation of section 678 is not discernible and it appears to be con-

trary to the language of the statute, which more reasonably supports a construction that states have concurrent jurisdiction over products that are misbranded, within the meaning of section 601(n), and have left the establishment where federal inspection takes place, regardless of where or when they were misbranded. In any event, neither of the other cases cited by plaintiff supports this dictum of the *McLaughlin* case, and this court does not now adopt it.

Our Court of Appeals has recently reiterated the standard that must be met for a preliminary injunction to be granted:

"We repeatedly have emphasized the heavy burden on a party seeking the extraordinary remedy of preliminary injunctive relief. The standard that has evolved is that the moving party 'assume[s] the burden of demonstrating *either* a combination of probable success and the possibility of irreparable injury *or* that [it has] raised serious questions going to the merits and that the balance of hardships [tips] sharply in [its] favor.'" [16]

Plaintiff in the instant case has not met this heavy burden. As the foregoing indicates, it has not demonstrated a probability of success at trial. Moreover, it has not shown that the balance of hardships tips in its favor so as to warrant enjoining the state from enforcing a statute that appears to be valid. This is especially so since defendant has indicated that it will allow plaintiff to sell its product within the state if it adds the words "imitation frankfurter" to the label.

Plaintiff's contention that unless relief is granted it will suffer irreparable injury is unpersuasive. It claims it may have to take back from distributors

12. *Id.* at 84.

13. 357 F.Supp. 529 (C.D.Cal.1973).

14. 37 App.Div.2d 456, 326 N.Y.S.2d 683 (1971).

15. *Id.* at 685.

16. Pride v. Community School Board (Pride I), 482 F.2d 257, 264 (2d Cir. 1973), *quoting* Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2d Cir. 1972) (emphasis added). *See also* Pride v. Community School Board (Pride II), 488 F.2d 321 (2d Cir., 1973).

some 7500 pounds of the product, the dollar value of which is $3,000 to $4,000, and faces the prospect of loss of profit on future sales. These claims are miniscule compared to the consuming public's right to be informed whether the product offered is authentic or imitation, and the correlative right to price it accordingly. Absent an indication that the product is an imitation, the potential loss to the public is incalculable.

Plaintiff's motion for a preliminary injunction is denied.