44 F.3d 740
 63 USLW 2385
 NATIONAL BROILER COUNCIL; American Meat Institute;
Arkansas Poultry Federation, Inc., Plaintiffs-Appellees,
v.
Henry J. VOSS, Director, California Department of Food and
Agriculture, Defendant-Appellant.
NATIONAL BROILER COUNCIL; American Meat Institute;
Arkansas Poultry Federation, Inc., Plaintiffs-Appellees,
v.
Henry J. VOSS, Director, California Department of Food and
Agriculture, Defendant,
and
The California Poultry Industry Federation,
Defendant-Intervenor-Appellant.
 Nos. 94-15676, 94-15690.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 7, 1994.
Decided Dec. 14, 1994.
 
 Randall B. Christison, Deputy Atty. Gen., Sacramento, CA, for defendant-appellant.
 William A. Bradford, Hogan & Hartson, Washington, DC, Harry E. Hull, Jr., McDonough, Holland & Allen, Sacramento, CA, for plaintiffs-appellees.
 Harvey I. Saferstein, Irell & Manella, Los Angeles, CA, for intervenor.
 Michael S. Raab, U.S. Dept. of Justice, Washington, DC, for U.S. as amicus curiae.
 Mary Ellen Fise, Washington, DC, for Consumer Federation of America as amicus curiae.
 Appeal from the United States District Court for the Eastern District of California.
 Before: GOODWIN, NORRIS and O'SCANNLAIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The State of California appeals a summary judgment declaring that the labeling provision of Sec. 26661 of the California Food & Agricultural Code is pre-empted by the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. Secs. 451-470, 851 F.Supp. 1461. Section 26661(a)(2) prohibits wholesalers from using the word "fresh" on labels for poultry and poultry products unless the poultry has been stored at temperatures at or above 26 degrees.[1] The PPIA regulates the distribution and sale of poultry and poultry products and contains an express pre-emption clause. It declares that "marking, labeling, packaging, or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State...." 21 U.S.C. Sec. 467e (emphasis added). Plaintiffs, three poultry and meat trade associations, brought this action claiming, inter alia, that Sec. 26661(a)(2) is pre-empted by the PPIA.
 
 
 2
 The district court held that: (1) the PPIA pre-empts the labeling provision of Sec. 26661; and (2) the labeling provision was not severable from the remaining provisions of Sec. 26661. We agree with the district court that the labeling provision of Sec. 26661 is pre-empted, but disagree on the issue of severability. Accordingly, we affirm the summary judgment order in part and reverse in part.
 
 
 3
 * PRE-EMPTION
 
 
 4
 We affirm the district court's decision that the labeling provision of Sec. 26661 is pre-empted by the PPIA on the basis of the court's Memorandum of Decision and Order (April 8, 1994), which reads, in relevant part, as follows:
 
 
 5
 * "Plaintiffs and the USDA argue that the California Act imposes a "labeling requirement" within the meaning of 21 U.S.C. Sec. 467e because it limits the use of the word "fresh" on poultry product labels. Drawing a distinction between "requirements" and "prohibitions," defendant argues that the California Act does not establish a "labeling requirement" because it does not require poultry producers affirmatively to include specified language on the label, but merely prohibits them from labeling poultry as "fresh" unless it complies with the Act."
 
 
 6
 "Defendant's interpretation of "labeling requirements" is hypertechnical and inconsistent with the language and purpose of the PPIA.[2] First, the term "requirements" ordinarily includes prohibitory obligations.[3] One can be, and often is, required not to do something, and there is no practical difference between a command that requires that the opposite of an action be taken--"you are required to be quiet"--as opposed to one that prohibits the very action--"talking is prohibited." Either form of expression fairly is described as a requirement, requiring action or inaction. Here in mandatory language the California Act requires that the term "fresh" only may be placed on the label in certain circumstances."
 
 
 7
 "Second, the language of several provisions of the PPIA indicates that Congress did not intend a distinction between "requirements" and "prohibitions." For example, 21 U.S.C. Sec. 459, entitled "Compliance by all establishments," provides that "[n]o establishment ... shall process any poultry or poultry product except in compliance with the requirements of this chapter." Similarly, Sec. 467e gives the states concurrent jurisdiction with the USDA to prevent the distribution of adulterated or misbranded articles "consistent with the requirements under this chapter." Surely Congress did not intend to allow official establishments and states, in performing the tasks delegated to them under the PPIA, to heed only the affirmative, but not the prohibitory, portions of the statute. Given this use of the term "requirements" elsewhere in the PPIA (including another clause of Sec. 467e), the word "requirements," as used in the pre-emption clause, should be construed to include prohibitory enactments. See Ardestani v. INS, 502 U.S. 129, ----, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991); Mississippi Poultry Ass'n, Inc. v. Madigan, 992 F.2d 1359, 1363 (5th Cir.), reh'g en banc granted, 9 F.3d 1116 (5th Cir.1993).[4] "
 
 
 8
 "Third, a construction of the term "requirements" to exclude prohibitory enactments would nullify the PPIA's pre-emption clause. Under defendant's interpretation, so long as a state used prohibitory phrasing, state labeling regulations would not be pre-empted even if in direct conflict with affirmative federal requirements under the PPIA.[5] A narrow interpretation of "requirements," to exclude prohibitions, entirely defeats the pre-emption clause and would leave labeling regulation within the power of the states. Yet according to the legislative history of the pre-emption clause, one of its key purposes was to ensure national uniformity in labeling:
 
 
 9
 States would be precluded from imposing additional or different labeling ... requirements for federally inspected products.
 
 
 10
 Both industry and consumers would benefit from ... greater uniformity of labeling requirements....
 
 
 11
 H.R.Rep. No. 1333, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 3426, 3442."
 
 
 12
 "Finally, there is little force to defendant's argument that in other legislative schemes Congress expressly has pre-empted both requirements and prohibitions and thus by negative inference only intended here to pre-empt requirements. Defendant particularly relies on the pre-emption provision in the Public Health Cigarette Smoking Act, 15 U.S.C. Sec. 1331-1340 (the "Smoking Act"), which pre-empts any "requirement or prohibition" inconsistent with the Smoking Act. Id. Sec. 1334(b). But this same argument has been convincingly rejected in the context of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), which has a pre-emption clause similar to that in the PPIA. See Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir.1993) (" '[n]o requirements or prohibitions' is just another way of saying a '[s]tate shall not impose ... any requirements.' Not even the most dedicated hair-splitter could distinguish these statements."); Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 981 F.2d 1177, 1179 (10th Cir.) ("Although the words employed in Sec. 136v(b) of FIFRA are different from those in ... the ... Smoking Act, their effect is the same."), cert. denied, --- U.S. ----, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); see also Stamps v. Collagen Corp., 984 F.2d 1416, 1421 (5th Cir.) (as to the Medical Device Amendments of the Federal Food, Drug, and Cosmetic Act (the "MDA"): "It would be anomalous to interpret the MDA differently from the [Smoking Act] solely on the basis that while they both employ 'requirement,' the MDA omits 'prohibition.' "), cert. denied, --- U.S. ----, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Congress uses a variety of similar formulations when enacting broad pre-emption clauses, and there is no indication in the PPIA, or in the other statutes with similar pre-emption clauses, that Congress intends substantive differences to flow from minor wording changes in these various clauses. See 21 U.S.C. Sec. 678 (Federal Meat and Inspection Act) ("addition[al]" or "different" state "requirements"); 7 U.S.C. Sec. 136v(b) (FIFRA) (same); 21 U.S.C. Sec. 360k(a) (the MDA) (same); 42 U.S.C. Sec. 4846 (Lead-Based Paint Poisoning Prevention Act of 1973) (pre-empting state laws which "provide for a requirement, prohibition or standard which differs from" federal law); 15 U.S.C. Sec. 1392(d) (National Traffic and Motor Vehicle Safety Act of 1966) (pre-empting state provisions "not identical to the Federal standard")."
 
 
 13
 "For all of these reasons, the court concludes that the term "requirements" in the PPIA pre-emption clause unambiguously includes prohibitory enactments. It follows that the California Act imposes a "labeling requirement" within the meaning of Sec. 467e."
 
 B
 
 14
 "If the California Act imposes a "labeling requirement" within the meaning of Sec. 467e, it is at least "in addition to ... those [labeling requirements] made under the PPIA." 21 U.S.C. Sec. 467e. No party disputes the fact that plaintiffs' members can label poultry products that have been chilled between 1 and 25 degrees Fahrenheit as "fresh" and comply with all federal labeling requirements but not comply with the California Act. Nevertheless, defendant contends that "in addition to" has a meaning in this context other than its normal meaning and thus that the California Act is not pre-empted by the "in addition to" language of the PPIA."
 
 
 15
 "Defendant first argues that "in addition to" should be distinguished from "identical to," which is the language used in the pre-emption clause in the National Traffic and Motor Vehicle Safety Act of 1966. This argument is similar to defendant's attempt unreasonably to limit the meaning of "requirements" and fares no better. "Not identical" and "in addition to, or different than" are not distinguishable under any fair construction of the phrases.[6] Defeated by the plain language of the statute, defendant suggests that the USDA's failure to attack state labeling provisions that were enacted both before and after passage of Sec. 467e amounts to an agency interpretation of the statute--presumably that "in addition to" means less than "not identical to"--to which deference is appropriate. But the USDA has challenged several state labeling laws on pre-emption grounds, both as a party and as an amicus curiae,[7] and it is hardly surprising that the USDA has not challenged or indeed may not have been aware of every state law that may be pre-empted by the PPIA. Little can be inferred from the exercise of such discretion or from lack of knowledge, certainly not an agency interpretation of "in addition to" different from its plain meaning and different from the position taken by the agency in this litigation."
 
 
 16
 "Finally, defendant argues that "in addition to" must have a meaning other than its plain and normal meaning because the PPIA gives the states concurrent jurisdiction with the USDA in preventing the distribution of adulterated or misbranded poultry. But Sec. 467e provides that the states may exercise concurrent jurisdiction with the USDA over poultry products inspected under the PPIA "consistent with the requirements" made under the PPIA. The provision authorizes states to undertake, concurrently with the USDA, efforts to enforce federal requirements. It does not grant states the authority to enact their own additional requirements. See Armour & Co. v. Ball, 468 F.2d 76, 84 (6th Cir.1972) (construing the identical language in the Federal Meat Inspection Act as permitting Michigan to enforce only federal, not state, misbranding provisions), cert. denied, 411 U.S. 981, 93 S.Ct. 2267, 36 L.Ed.2d 957 (1973); Swift & Co. v. Walkley, 369 F.Supp. 1198, 1199-1201 (S.D.N.Y.1973) (same). Where Congress in the PPIA intended that the states could develop standards stricter than the federal standards it made explicit provision. See, e.g., 21 U.S.C. Sec. 454(a)(1) (authorizing the USDA to cooperate with appropriate state agencies in developing and administering inspection requirements "at least equal to" the requirements contained in the PPIA). The pre-emption clause as to labeling requirements evinces no such intent and uses no such language."
 
 
 17
 "In short, the California Act imposes a labeling requirement that is at least "in addition to" labeling requirements made under the PPIA. There is no sound basis for interpreting the language of the pre-emption clause in a manner other than that dictated by its plain language. Plaintiffs therefore are entitled to summary judgment on their pre-emption claim."
 
 C
 
 18
 "Alternatively, the California Act's labeling requirement is pre-empted by Sec. 467e because it is "different than" existing federal poultry labeling requirements. Federal regulations do not define "fresh" with respect to poultry but do define the term "frozen." See 9 C.F.R. Sec. 381.66f(2) (poultry to be frozen "shall be frozen ... so as to bring the internal temperature of the birds at the center of the package to 0 [degrees] F. or below within 72 hours from the time of entering the freezer"). The USDA also has promulgated a regulation that allows poultry to be "labeled 'frozen' only if it is frozen in accordance with Sec. 381.66f(2) under Department supervision and is in fact in a frozen state." Id. Sec. 381.129(b)(3). Federal regulations also dictate that "[a]ll poultry that is slaughtered and eviscerated in [an] official establishment shall be chilled immediately after processing so that the internal temperature is reduced to 40 [degrees Fahrenheit] or less." Id. Sec. 381.66(b)(1)."
 
 
 19
 "In July of 1988, the USDA issued a policy memo stating that it would permit the term "fresh" to be used only on labels of poultry products that had not been chilled to a temperature of 26 degrees or less. See USDA Policy Memo 022B (July 11, 1988). Shortly thereafter, however, the agency reversed its position by issuing Policy Memo 022C. Under the new policy, the USDA interprets its regulations to permit poultry processors to label poultry as "fresh" if it is stored at 40 degrees or less and has not been "frozen," at or below zero degrees:
 
 
 20
 Policy Memo 022B is being revised to reflect the deletion of the provision that established 26 degrees Fahrenheit (or less) as the threshold temperature at which unprocessed poultry products could not be labeled as "fresh." The Agency has now decided, after much deliberation on this issue, not to limit the use of the term "fresh" on unprocessed poultry products based on an internal temperature with the exception as defined by the current regulations, i.e., product is above zero degrees and below 40 degrees Fahrenheit, and has not been previously frozen at or below zero degrees Fahrenheit. This decision is predicated on the belief that it is not practical under existing marketing strategies and distribution patterns, to define "fresh" in terms of internal temperature beyond the scope of the current regulations, nor is it practical to define consumer expectations for poultry products labeled as "fresh."
 
 
 21
 USDA Policy Memo 022C, at 2 (Jan. 11, 1989)."
 
 
 22
 " "[A]n agency's interpretation of its own regulations ... must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). Although the regulations do not directly address the definition of "fresh," they do define "frozen" and limit the use of the word "frozen" on the label. The agency's view, reflected in Policy Memo 022C, that what may not be labeled as "frozen" may be labeled as "fresh" is not an unreasonable construction of the regulatory scheme.[8] Policy Memo 022C therefore should be given controlling weight.[9] "
 
 
 23
 "Under Policy Memo 022C's interpretation of 9 C.F.R. Secs. 381.66(b)(1) & 381.129(b)(3), federal regulations permit poultry to be labeled "fresh" if it has been stored at temperatures above 0 degrees and at or below 40 degrees Fahrenheit. Thus, some poultry which may be labeled as "fresh" under federal requirements may not be labeled "fresh" under the California Act's 25 degree rule. It follows that the California Act's labeling requirement is "different than" labeling requirements made under the PPIA.[10] Plaintiffs therefore are entitled to summary judgment on their pre-emption claim on this alternative ground.[11] "II
 
 SEVERABILITY
 
 24
 Section 26661 regulates more than labels. It makes it illegal to advertise, label, describe, otherwise hold out, or sell as "fresh" poultry that is stored below 26 degrees. Cal.Food & Agric.Code Sec. 26661(a)(1), (2). Plaintiffs argue that if the labeling portion of Sec. 26661 is pre-empted, the entire statute must be invalidated because the remainder is not severable. We reject this argument on the basis of an express severability clause, which the California legislature added to Sec. 26661 after the district court ruled that the labeling provision was not severable. The severability clause provides as follows:
 
 
 25
 Each prohibition in subdivision (a) [labeling, selling, advertising, distributing, holding out] stands alone and if any prohibition in subdivision (a) has been held, or in the future is held, to be unconstitutional, preempted by federal law, or otherwise invalid by any court, all of the other prohibitions set forth in subdivision (a) are intended to, and shall remain, fully effective and shall be interpreted to exclude the unconstitutional, preempted, or otherwise invalid prohibition or prohibitions. If any sentence, clause, word, or portion of this section is for any reason held to be unconstitutional, preempted by federal law, or otherwise invalid, that holding shall not affect the remaining portions of this section. The Legislature hereby declares that it would have enacted this section and each sentence, clause, word, or portion thereof despite the fact that one or more sentences, clauses, words, or portions of this section may be held unconstitutional, preempted by federal law, or otherwise invalid.
 
 
 26
 Cal.Food & Agric.Code Sec. 26661(d) (emphasis added). That Sec. 26661 contains an express severability clause, however, is telling, but not absolutely conclusive.[12] See Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 821, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989).
 
 
 27
 The final test of severability is "whether the remainder ... is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute ... or constitutes a completely operative expression of the legislative intent ... [and is not] so connected with the rest of the statute as to be inseparable." Santa Barbara Sch. Dist. v. Superior Court, 13 Cal.3d 315, 331, 118 Cal.Rptr. 637, 530 P.2d 605 (1975) (citations omitted).
 
 
 28
 Plaintiffs do not, and could not, argue that the intent of the California legislature is unclear. Santa Barbara School District focuses the inquiry on legislative intent. Id. The express severability clause, enacted immediately after the state was enjoined from enforcing the entire statute by the district court, leaves no room for doubt that the legislature intended the remainder of Sec. 26661 to stand notwithstanding the invalidity of the labeling portion of the statute.
 
 
 29
 Plaintiffs urge, however, that because the statute broadly regulates the marketing of "fresh" poultry, it makes no sense to invalidate the prohibition against labeling but leave intact the other parts of the statute, such as the restriction on advertising poultry as "fresh." Plaintiffs rely on Gerken v. Fair Political Practices Comm'n, 6 Cal.4th 707, 25 Cal.Rptr.2d 449, 863 P.2d 694 (1993), for the proposition that an invalid statutory provision must be functionally, as well as volitionally, severable.[13]
 
 
 30
 The labeling regulation is functionally severable from the remainder of Sec. 26661. The legislature's stated purpose in enacting Sec. 26661 was to "protect consumers from misleading claims that previously frozen poultry is 'fresh'." Cal.S.Bill 1553, Sec. 1. That legislative purpose will continue to be served, for example, by the restriction on advertising poultry as "fresh" even though the labeling restriction is no longer enforced. Consumers will continue to receive whatever protection the advertising restriction offers them.[14]
 
 
 31
 Finally, plaintiffs suggest that the labeling provision is not grammatically severable. Calfarm Ins. Co., 48 Cal.3d at 821-22, 258 Cal.Rptr. 161, 771 P.2d 1247 (invalid provisions must be grammatically severable). This argument is baseless. As amended, the labeling provision is located in an independent clause, which can be cleanly excised from the remainder of the statute without affecting the wording of any other provision. See id. at 822, 258 Cal.Rptr. 161, 771 P.2d 1247.
 
 
 32
 The California legislature has made its intent abundantly clear and the labeling provision is grammatically and functionally severable. We hold that the labeling portion of Sec. 26661, which is pre-empted by the PPIA, is severable from the remainder of the statute.
 
 
 33
 The summary judgment is affirmed to the extent that it declares the labeling provision of Sec. 26661 to be pre-empted and reversed to the extent it declares the remainder of the statute to be invalid as non-severable.
 
 
 34
 O'SCANNLAIN, Circuit Judge, specially concurring:
 
 
 35
 The lay reader of this opinion may be puzzled by the legal gymnastics which always appear to permeate the law of government regulation. To clarify, I would note that Congress has given a federal bureaucrat the power to order that frozen chickens be labeled "fresh." We affirm this absurdity by holding, quite properly, that the California legislature is federally preempted from requiring that frozen chickens be labeled "frozen."
 
 
 36
 Our opinion should not be viewed as a retreat from the battle scene of federalism, however. Rather, we "hold the field and, at the very least, render a little aid to the wounded." Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 580, 105 S.Ct. 1005, 1033, 83 L.Ed.2d 1016 (1984) (O'Connor, J., dissenting). Indeed, the States are not without devices of their own to protect their citizens when Congress permits the federal bureaucracy to impose the absurd. California stores can still be required by state law to tell the truth in advertising and to display frozen chickens for what they are--"frozen"--even though the labels on the chickens themselves are required by federal law to say "fresh."
 
 
 37
 Lewis Caroll's Humpty Dumpty may well be speaking for the federal bureaucracy when he says "When I use a word, it means just what I choose it to mean--neither more nor less." Let us hope that Alice's world can be confined to the Wonderland within the Washington Beltway.
 
 
 
 [1]
 Initially, Sec. 26661 stated: "No person who processes, butchers, slaughters, packs, repacks, or sells poultry or poultry meat for wholesale distribution or sale, or who engages in the business of buying, selling, or reselling poultry or poultry meat on commission for wholesale distribution or sale shall advertise, label, describe, otherwise hold out or sell as "fresh" 'any poultry or poultry meat whose internal temperature ever has been equal to or below 25 degrees Fahrenheit or that ever has been stored in the aggregate for 24 hours or more at an average ambient temperature of 25 degrees Fahrenheit or below.' " As amended, Sec. 26661 covers retailers and establishes the cut-off storage temperature at 26 degrees
 
 
 [2]
 Defendant correctly notes that express preemption provisions are to be interpreted narrowly. Cipollone v. Liggett Group, Inc., --- U.S. ----, ----, 112 S.Ct. 2608, 2621, 120 L.Ed.2d 407 (1992). However, a narrow interpretation is not the same as one that is unreasonably cramped
 
 
 [3]
 The word "requirement" is defined as: "1. Something that is required; necessity. 2. Something obligatory; prerequisite." American Heritage Dictionary 1050 (2d Coll.Ed.1985)
 
 
 [4]
 Defendant notes that Congress enumerated several "[l]abeling ... requirements" in 21 U.S.C. Sec. 457 and several "[p]rohibited acts" in 21 U.S.C. Sec. 458, and from this argues that the Act distinguishes between "requirements" and "prohibitions," and that the pre-emption clause should be understood in light of this distinction. This argument is flawed for several reasons. First, as noted above, it is inconsistent with the use of the term "requirements" in Sec. 459 and elsewhere in Sec. 467e. Second, the Act does not refer to all prohibitory measures in the PPIA as "prohibitions," suggesting that Congress did not intend a separate category of delimited prohibitions. See, e.g., id. Sec. 460(d) (prohibitory subsection entitled "[r]egulation of transactions ...") (emphasis added). Finally, the USDA has referred to its prohibitory regulations as "requirements," suggesting that the agency charged with enforcement of the PPIA does not understand the PPIA to distinguish prohibitions from requirements. See 37 Fed.Reg. 9706, 9707 (1972) ("The requirements of Subpart N of the regulations [9 C.F.R. Secs. 381.115-141] are deemed necessary to assure compliance with [Sec. 453(h)(6) ] and other provisions of the [PPIA].") (emphasis added). At least two of the regulations contained in Subpart N are phrased as "prohibitions." See 9 C.F.R. Sec. 381.129(b); id. Sec. 381.129(b)(5)
 
 
 [5]
 For example, a regulation made under the PPIA requires that poultry products including two or more ingredients "shall show a statement of the ingredients." 9 C.F.R. Sec. 381.118(a). Under defendant's theory, a state could enact a law prohibiting a statement of ingredients on poultry products sold in that state and such a law would not be preempted by Sec. 467e because it would be a "prohibition," not a "requirement." Moreover, this law would not be pre-empted by virtue of its direct conflict with the PPIA because this form of pre-emption analysis is superseded by the express pre-emption provision. Cipollone, --- U.S. at ----, 112 S.Ct. at 2618 ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.")
 
 
 [6]
 Defendant also claims that other provisions of the PPIA indicate that Congress used terminology other than "in addition to, or different than" when it meant to bar anything but "identical" standards. Defendant relies on a PPIA provision which prohibits the importation of poultry or poultry products from foreign countries unless they "(A) [have been] subject[ed] to the same inspection ... standards applied to products produced in the United States; and (B) have been processed in facilities and under conditions that are the same as those under which similar products are processed in the United States." 21 U.S.C. Sec. 466(d)(1) (emphasis added). However, this provision cannot shed any light on congressional intent at the time Sec. 467e was enacted, because Sec. 466(d)(1) was enacted as part of the 1985 amendments to the PPIA, 17 years after passage of Sec. 467e. In any event, the argument offered here is but a variation on defendant's stubborn refusal to acknowledge that some words and phrases have the same meaning
 
 
 [7]
 See Grocery Mfrs. of America, Inc. v. Gerace, 581 F.Supp. 658, 660 n. 1 (S.D.N.Y.1984) (USDA is defendant to Commissioner Gerace's counterclaim), aff'd in part and rev'd in part, 755 F.2d 993 (2d Cir.), judgment aff'd and cert. denied, 474 U.S. 801, 820, 106 S.Ct. 36, 69, 88 L.Ed.2d 29 (1985); American Meat Institute v. Ball, 550 F.Supp. 285, 288 (W.D.Mich.1982) (USDA submits amicus curiae brief), aff'd sub nom. American Meat Institute v. Pridgeon, 724 F.2d 45 (6th Cir.1984); Instituto Puertoriqueno de Carnes, Inc. v. Davila, Civ. No. 92-2098 (HL) (D.P.R.1992) (same)
 
 
 [8]
 There is no one obvious temperature below which it can be said that poultry is no longer "fresh." Zero degrees Fahrenheit is the approximate temperature at which all water molecules in poultry are frozen; at 25 degrees a sufficient number of water molecules are frozen to make the poultry hard to the touch; at 14 degrees bacterial growth stops
 
 
 [9]
 In addition to deferring to the USDA's interpretation of its regulations, as expressed in Policy Memo 022C, some deference may be granted to the USDA's amicus curiae brief. Although little weight should be given to the expedient litigating positions of government agencies, see, e.g., Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213, 109 S.Ct. 468, 474, 102 L.Ed.2d 493 (1988); see also 3550 Stevens Creek Assoc. v. Barclays Bank of California, 915 F.2d 1355, 1364 n. 19 (9th Cir.1990), cert. denied, 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991), the USDA's brief in this case only reaffirms its five-year old interpretation of the relevant regulations
 
 
 [10]
 The "made under" language in Sec. 467e means that the PPIA's pre-emptive effect is not limited to provisions actually contained in the statute, but also includes regulations promulgated by the USDA. See Jones v. Rath Packing Co., 430 U.S. 519, 529-32, 97 S.Ct. 1305, 1311-13, 51 L.Ed.2d 604 (1977) (invalidating California net weighing requirements which did not allow for reasonable variations of weight caused by moisture loss because such requirements were different than USDA regulations that took moisture loss into account)
 
 
 [11]
 Contrary to defendant's assertions, no factual issues need to be resolved in order to reach this conclusion. It is irrelevant that Policy Memo 022C may have been adopted only as a result of pressure brought to bear on the USDA by groups such as plaintiff National Broiler Council. See Home Box Office, Inc. v. FCC, 567 F.2d 9, 57 (D.C.Cir.) (noting that "informal contacts between agencies and the public are the 'bread and butter' of the process of administration"), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Also irrelevant is the fact that the USDA's position on the labeling of "fresh" poultry has evolved over time, see Rust v. Sullivan, 500 U.S. 173, 186-88, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991) (holding that an agency must be given ample latitude to reconsider its policies), and the fact that a former high-ranking official of the Food Safety Inspection Service prefers the rescinded Policy Memo 022B to the currently operative Policy Memo 022C. See Decl. of Dr. Lester Crawford p 20
 Defendant's reference to several other USDA "policies" in an attempt to generate a factual dispute is similarly unavailing. These "policies," which concern the shipping, grading, and weighing of poultry, either conform to Policy Memo 022C or are not relevant to poultry labeling.
 
 
 [12]
 The question whether a portion of a statute that is pre-empted is severable from the remainder of the statute is a question of state law. See Exxon Corp. v. Hunt, 475 U.S. 355, 376, 106 S.Ct. 1103, 1116, 89 L.Ed.2d 364 (1986)
 
 
 [13]
 Moreover, the express severability clause in Sec. 26661 more than satisfies the formal test for volitional severability: "whether it can be said with confidence that the [enacting body's] attention was sufficiently focused upon the parts to be severed so that it would have separately considered and adopted them in the absence of the invalid portions." Gerken, 6 Cal.4th at 714, 25 Cal.Rptr.2d 449, 863 P.2d 694
 
 
 [14]
 Moreover, as a practical matter, it would certainly be possible for the state to enforce the non-labeling provisions of Sec. 26661 even without being able to restrict labeling at the same time. See Chemical Specialties Mfrs. Ass'n. v. Allenby, 958 F.2d 941, 943 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992) (upholding state law requiring point-of-sale warnings even though state could not regulate labels themselves); Grocery Mfrs. of Am., Inc. v. Gerace, 755 F.2d 993 (2d Cir.1985) (upholding a New York law requiring that a product be called "imitation" cheese on signs, menus, and containers, even though a package labeling requirement that differed from existing federal labeling requirements was held to be preempted by federal law)