[No. 61082-7.   En Banc.   June 15, 1995.]

ALL-PURE CHEMICAL CO., ET AL., *Petitioners,* v. LOUISE WHITE, *Respondent.*

2

*Miles J. Zaremski, Deborah H. Shefrin,* and *Arnstein & Lehr; Steven R. Meeks* and *Meeks, Morgan & Kirkpatrick,* for petitioners.

*Thomas M. Christ, Wade R. Keenon, Patrick D. Gilroy,* and *Mitchell, Lang & Smith,* for respondent.

UTTER, J.* — All-Pure Chemical Co. and All-Pure Chemical Northwest, Inc., appeal the decision of the Court of Appeals which affirmed the dismissal of All-Pure's contribution action against Louise White, d/b/a Pools Unlimited. The Court of Appeals found that the labeling requirements of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136, preempt state tort liability arising from a failure to warn, thereby defeating the contribution action against White. For the reasons set out below, we agree with the Court of Appeals that FIFRA's preemption clause expressly preempts state tort claims based on a failure to warn. We therefore affirm the dismissal of All-Pure's contribution action against White.

All-Pure Chemical Co. and All-Pure Chemical Northwest, Inc. (referred to collectively as "All-Pure") distribute, under the All-Pure brand name, swimming pool chemical products, including "All-Pure Professional Pool Care Products Shocking Granules" (shocking granules) and "All-Pure Professional Pool Care Products Stabilized Granular Chlorinating Compound" (chlorinating compound). The shocking granules were manufactured by World Industries Inc., and the chlorinating compound was manufactured by Hasa Chemicals Inc.

World Industries and Hasa Chemicals registered the labels with the United States Environmental Protection Agency (EPA), in compliance with FIFRA, and are considered the primary registrants under the act. As a distributor, All-Pure is considered a supplemental registrant and is prohibited from making any changes to the approved label with the exception of the brand name.

In 1983, All-Pure sold these two chemicals to Louise White, who operates Pools Unlimited, a pool supply store. White subsequently sold All-Pure's shocking granules and chlorinating compound to Catherine Lundberg for use in her pool. On September 24, 1983, Lundberg incorrectly mixed the chemicals together and then added water, which caused an explosion in which she was injured.

---

*Judge Robert F. Utter is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).

Lundberg filed a products liability action against All-Pure. For reasons that are unclear, Lundberg did not name White in the complaint, nor did All-Pure bring a third-party complaint against White. In October 1987, a jury found that the warnings and instructions on the shocking granules package were inadequate to make the product reasonably safe for its intended use, and that All-Pure was thereby liable to Lundberg. The jury further found that Lundberg had sustained $88,649 in damages, but that Lundberg was contributorily negligent and was 51 percent at fault. Accordingly, the judgment against All-Pure was reduced to $43,438.01 plus costs.

All-Pure paid the judgment and then brought this contribution action against White. All-Pure argued that White was, along with All-Pure, jointly and severally liable to Lundberg for failing to provide adequate warnings and instructions with the shocking granules. The trial court granted White's motion for summary judgment and subsequently denied reconsideration. All-Pure appealed, and the Court of Appeals affirmed the dismissal, holding that because Lundberg's claim against All-Pure was preempted by FIFRA, there can be no joint and several liability to support the contribution claim against White. All-Pure now seeks review of the Court of Appeals decision.

I

The right of contribution among joint tortfeasors is governed by RCW 4.22.040(1). That statute provides for the right of contribution only among "two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury". Thus, the party seeking contribution and the party against whom it is sought must both be liable for the underlying injury. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 554, 707 P.2d 1319 (1985). In this case, therefore, both All-Pure and White must be liable for the injury to Lundberg in order for All-Pure's contribution action to survive. If one (or both) of

the parties is not liable as a matter of law, then the contribution claim must fail.[1]

■ All-Pure suggests that because a jury in the underlying case found All-Pure liable to Lundberg, it is per se liable for the purposes of this contribution claim. Reply Br. of Appellants at 3. That judgment, however, would have a binding effect in the present litigation only if it meets the requirements of res judicata. Because White was not a party to the underlying case, that doctrine does not apply and the earlier judgment cannot be applied against White. *See Culinary Workers & Bartenders Union 596 Health & Welfare Trust v. Gateway Cafe, Inc.*, 95 Wn.2d 791, 794, 630 P.2d 1348 (1981), *amended*, 642 P.2d 403, *cert. denied*, 459 U.S. 839 (1982).·

## II

The question we must address therefore is whether both parties are liable as a matter of law on the underlying injury. White contends that neither party is liable to Lundberg because under the doctrine of federal preemption, FIFRA preempts Lundberg's state tort claims based on a duty to warn.

## A

■ The doctrine of federal preemption is rooted in the supremacy clause of the United States Constitution.[2] Although there is a presumption that the "historic police powers of the States" will not be preempted by federal law, that presumption can be overcome if Congress intends that the federal law preempt state law. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947).

---

[1]In this case, this result is also supported by sound policy considerations and common sense. If anybody is to pay the price of All-Pure's failure to raise the preemption defense in the earlier case, it should be All-Pure, not White.

[2]"This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

■ In *Berger v. Personal Prods., Inc.*, 115 Wn.2d 267, 797 P.2d 1148 (1990), *cert. denied*, 499 U.S. 961 (1991), we set out the requirements for federal preemption.

> Federal law preempts state law when Congress intends to occupy a given field, when state law directly conflicts with federal law, or when state law would hinder accomplishment of the full purposes and objectives of the federal law. Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Federal regulations have the same preemptive effect as federal statutes.

(Citations omitted.) *Berger*, 115 Wn.2d at 270. In that case, we addressed the issue of whether the labeling requirements of the Medical Device Amendments of 1976, 21 U.S.C. § 360c-k, 21 C.F.R. § 801.430, to the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 *et seq.*, preempt a state tort action based on inadequate warnings of the risk of toxic shock syndrome resulting from tampon use when the product was in compliance with the federal requirements.

> The statute in question states:

> [N]o State or political subdivision of a State may establish or continue in effect . . . any requirement—

>> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

>> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). Pursuant to its statutory authority, the Food and Drug Administration subsequently adopted labeling requirements for tampons.

We unanimously held that the federal law preempts state tort claims based on inadequate labeling or warnings where the product is in compliance with the federal requirements. *Berger*, 115 Wn.2d at 268-69.

The United States Supreme Court recently addressed

the same question in relation to a federal statute that contains a similar preemption provision to those found in the statutes at issue in *Berger* and before us now. In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992), the Court examined the express preemption provision of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331-1340, which provides:

> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334(b). The Court held that this provision expressly preempts state common-law claims based on a failure to warn. *Cipollone*, 120 L. Ed. 2d at 428.

■ The Court added a "new wrinkle", *Myrick v. Freuhauf Corp.*, 13 F.3d 1516, 1521 (11th Cir.), *cert. granted sub nom. Freightliner Corp. v. Myrick*, 115 U.S. 306, 130 L. Ed. 2d 218, 115 S. Ct. 306 (1994) *aff'd,* 115 S. Ct. 1483 (1995), to federal preemption analysis in holding:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority,"
>
> "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.

(Citations omitted.) *Cipollone*, 120 L. Ed. 2d at 423. The Court thus limited the role of implied preemption analysis to cases in which there is no express preemption provision or the preemption provision does not provide a "reliable indicium of congressional intent".

In addition to the preemption clause of the 1969 act, the Court also examined an earlier version of the preemption provision, found in section 5(b) of the 1965 Federal Cigarette Labeling and Advertising Act, and held that it did not preempt state common-law claims. Although the

8

plurality used the earlier version as a contrast to the broad preemption language of the 1969 act, its holding did not rely on this unique history. The plurality made clear that the plain language of the 1969 act dictated the holding. The Court noted:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. . . .
>
>     . . . the language of the Act plainly reaches beyond [positive] enactments. "We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning."

*Cipollone*, 120 L. Ed. 2d at 426 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)).

The plurality held "insofar as claims under [plaintiff's] failure to warn theory require a showing that [the defendants'] post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted." *Cipollone*, 120 L. Ed. 2d at 428. Although this holding was in a portion of the plurality opinion to which only four Justices joined, two concurring Justices were of the opinion that the broad language of the preemption clause would have preempted *all* of the petitioner's claims. Thus, a majority of the Justices agreed that these failure to warn claims were preempted.

### B

The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.*, requires the manufacturer, as the primary registrant, to register with the EPA all labeling and packaging for the regulated chemical. The labeling must include, *inter alia*, warnings and precautionary statements, 40 C.F.R. § 156.10(h), and directions for use, 40 C.F.R. § 156.10(i). These warnings and directions must be adequate to protect the public from harms which

include "personal injury". 40 C.F.R. § 156.10(i)(1)(i). FI-FRA contains a preemption clause designed to ensure uniformity of labeling:

### (a) In general

A State may regulate the sale or use of any federally regulated pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

### (b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v. This section explicitly preempts any attempt by a State to require any labeling that supplements or is different from that which is required by FIFRA.

■ As we know from *Cipollone* and *Berger*, the term "requirement" encompasses both positive enactments and the common law. *Cipollone* tells us that the words "no requirement or prohibition" found in the preemption clause of the 1969 Public Health Cigarette Smoking Act

easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

. . . .

. . . it is the essence of the common law to enforce duties that are either affirmative requirements or negative prohibitions.

*Cipollone*, 120 L. Ed. 2d at 426 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959)).

The fact that the FIFRA preemption clause bars state "requirements" for labeling that are different from those imposed by the act, while the 1969 cigarette act bars

"requirements or prohibitions" makes no difference in this context. A determination in a state tort case that a label is inadequate would normally be thought of as imposing a labeling "requirement" rather than a "prohibition", exactly that which is forbidden by FIFRA. Moreover, as the Ninth Circuit Court of Appeals has noted in the discussion of a preemption clause similar to that in FIFRA,

> the term "requirements" ordinarily includes prohibitory obligations. One can be, and often is, required *not* to do something, and there is no practical difference between a command that requires that the opposite of an action be taken . . . as opposed to one that prohibits the very action . . . . Either form of expression fairly is described as a requirement, requiring action or inaction.

(Footnote omitted.) *National Broiler Council v. Voss*, 44 F.3d 740, 743 (9th Cir. 1994). The Supreme Court's analysis in *Cipollone*, therefore, is equally applicable to the language of the FIFRA preemption clause.

■ Our holding in *Berger* also supports this result. There, we cited with approval the United States District Court for the District of South Carolina in *Stewart v. International Playtex, Inc.*, 672 F. Supp. 907 (D.S.C. 1987), which "rejected the contention that state tort law should not be considered a state law 'requirement' within the meaning of the Medical Device Amendments preemption provision defined in 21 C.F.R. § 808.1(b)". *Berger*, 115 Wn.2d at 274. Thus, any state tort claim that requires a showing that a party should have included additional or different labeling or packaging than is required by FIFRA is preempted by the act's express preemption clause. Another aspect of the language used in section 136v(b) supports preemption. The preemption clause asserts that a State "shall not *impose* . . . any requirement[ ] for labeling . . .". The use of the word "impose" makes no differentiation between the imposition of requirements by the legislative or executive branches and the imposition of requirements by the judicial branch through the development of state common law. If Congress wished to limit the

effect of the preemption clause to positive enactments by a state legislature or regulatory agency, it could have used the word "enact" or "pass" instead.

The legislative history of FIFRA also supports preemption in this case. The Senate Agriculture and Forestry Committee Report states that the preemption provision "preempts any State labeling or packaging requirements differing from such requirements under the Act". S. Rep. No. 838, 92d Cong., 2d Sess. 30 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021. The House Report prepared by the Agriculture Committee declared that "[i]n dividing the responsibilities between the States and the Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging." H.R. Rep. No. 511, 92d Cong., 2d Sess. 16 (1971), *reprinted in* 1972 U.S.C.C.A.N. 3993. The phrase "completely preempt State authority" is clearly very broad and would seem to include all state authority, whether it be legislative, executive or judicial authority. Moreover, there is nothing in the legislative history to indicate that Congress intended to exclude state common law from the preemptive reach of FIFRA.

The labels on All-Pure's shocking granules and chlorinating compound were approved by the EPA. EPA approval constitutes a judgment by the agency that the labels meet the requirements of FIFRA and that they are therefore adequate to protect the public from various harms including "personal injury". As a secondary registrant under FIFRA, All-Pure is prohibited from making any changes to the label with the exception of the brand name. Clerk's Papers (Dep. of Arturo Castillo), at 35. Imposing a state tort remedy on All-Pure for its failure to provide adequate warnings is, in effect, requiring All-Pure to provide additional warnings. As a distributor, who unlike the retailer does not deal with the ultimate user, the only practical way All-Pure could have provided

additional warnings would have been to add to the EPA-approved labeling.[3]

■ Even if All-Pure could have provided additional warnings through a means other than labeling or packaging, however, a requirement that it do so would be premised upon a determination that the EPA-approved labels were inadequate and must be supplemented.

> Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also pre-empted by FIFRA.

*Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir.) (*Papas II*), *cert. denied*, 510 U.S. 913, 126 L. Ed. 2d 248, 114 S. Ct. 300 (1993). *See also Worm v. American Cyanamid Co.*, 5 F.3d 744, 748-49 (4th Cir. 1993) (*Worm II*).

All-Pure contends the suggestion that the preemption defense would have shielded it from liability is "pure speculation" since at the time of the trial, the law was unclear concerning the preemptive effect of FIFRA. Reply Br. of Appellant, at 3. This argument is without merit. As the Court of Appeals pointed out, "FIFRA's preemption clause has been in effect since 1972, and it would have preempted Lundberg's claim in 1983 to the same extent as it does today." *All-Pure Chem. Co. v. White*, Court of Appeals cause 15833-7-II (Oct. 12, 1993) *slip op.* at 9.

Finally, we note that our holding does not affect all state remedies for a consumer harmed by a product registered under FIFRA. Our holding does not, for example, address the viability of tort claims based on design defects, manufacturing defects, negligent testing or inspection, or certain warranty claims. Thus, while federal preemption "implicates the very structure of federalism established by our Constitution", Paul Wolfson, *Preemption and Federalism: The Missing Link*, 16 Hastings Const. L.Q. 69

---

[3]This distinction is not meant to imply that a state tort remedy against the retailer is not preempted by FIFRA's labeling requirements.

(1988), FIFRA's intrusion into state sovereignty is limited and carefully circumscribed.

## C

That FIFRA preempts state tort claims based on a failure to warn is supported by the large majority of cases from other courts dealing with federal preemption by FIFRA of state tort remedies. In fact, of the federal circuit courts that have decided this issue in light of *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992), every one has found that state tort claims based on a duty to warn are preempted by FIFRA to the extent that they depend on the inadequacy of the labeling or packaging.

In *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177 (10th Cir.), *cert. denied*, 510 U.S. 813, 126 L. Ed. 2d 30, 114 S. Ct. 60 (1993) (*Arkansas-Platte* II), the Tenth Circuit held: "[t]o the extent that state tort claims in this case require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required under FIFRA, they would be expressly preempted." *Arkansas-Platte* II, 981 F.2d at 1179. In support of this holding, the court stated: "[w]e believe Congress circumscribed the area of labeling and packaging and preserved it only for federal law. With the same stroke, Congress banned any form of state regulation". *Arkansas-Platte* II, 981 F.2d at 1179. Like the other circuits, the court found that there is no difference for these purposes between positive enactments of a State and state common law.

> When one looks to the purpose underlying both legislative regulation of labeling and packaging and a state common law duty to warn, it becomes evident those purposes are the same. Indeed, a state common law duty to warn is nothing more than a duty to label a product to provide information. In that sense, the common law duty is no less a "requirement" in the preemption scheme than a state statute imposing the same burden.

*Arkansas-Platte* II, 981 F.2d at 1179.

In *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993), the court relied on the Supreme Court's opinion in *Cipollone* and held that:

> Given the comprehensive nature of the FIFRA labeling process, it is apparent that § 136v(b), prohibiting any state requirement in addition to or different from the federal requirements, dictates the preemption of any state common law cause of action that rests on an alleged failure to warn or communicate information about a product through its labeling.

*Worm* II, 5 F.3d at 747.

The Eleventh Circuit reached the same conclusion in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.), *cert. denied*, 510 U.S. 913, 126 L. Ed. 2d 248, 114 S. Ct. 300 (1993). Also relying on *Cipollone*, the court held that "FIFRA expressly preempts state common-law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging". *Papas* II, at 520. The court also noted that even if the defendant could have provided additional information or warnings through a means other than labeling and packaging, any duty to do so would implicitly depend on a determination that the labeling was inadequate and, therefore, any claim based on such a duty is also preempted. *Papas* II, at 519.

The Seventh Circuit also reached this conclusion in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993), noting that

> In order to succeed in the wake of *Cipollone*, then, Shaw would have to show that FIFRA's pre-emption language is less sweeping than the language of the 1969 Cigarette Act. Yet we can discern no significant distinction at all . . . . Both seem equally emphatic: "[n]o requirements or prohibitions" is just another way of saying a "[s]tate shall not impose any requirements." Not even the most dedicated hair-splitter could distinguish these statements.

*Shaw*, 994 F.2d at 371.

In *King v. E.I. Du Pont de Nemours & Co.*, 996 F.2d 1346 (1st Cir.), *cert dismissed*, 510 U.S. 985, 126 L. Ed. 2d 440, 114 S. Ct. 490 (1993), the court extensively reviewed *Cipollone* and then stated: "[w]e hold that, in light of *Cipollone*, FIFRA preempts the plaintiffs' state law tort claims based on the defendants' alleged failure to provide adequate warnings about the health hazards of the herbicides they manufactured and sold". *King*, 996 F.2d at 1349. The court noted that:

> The FIFRA language prohibiting the states from "impos[ing] or continu[ing] in effect any requirements," 7 U.S.C. § 136v(b), is virtually indistinguishable from the state-imposed "requirement" language that *Cipollone* held preempted the state common law tort claims based on inadequate warning. FIFRA's language, too, preempts the state law lack-of-warning claims involved in this case.

*King*, 996 F.2d at 1349. The court went on to review the legislative history of FIFRA and concluded that it too supports the court's holding in favor of preemption. *King*, 996 F.2d at 1349-50.

In *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994), the Fifth Circuit acknowledged the presumption against the preemption of those police powers that have historically been left to the States and noted that the health and safety matters at issue in cases before the court were among those matters that are historically areas of state regulation. *MacDonald*, 27 F.3d at 1023. The court found, however, that Congress intended that the federal law preempt state law in the area of labeling, and that "state law" includes state common law. *MacDonald*, 27 F.3d at 1024-25. In response to the argument that common-law liability does not impose labeling "requirements" because the liable party could simply pay the judgment and continue to use the EPA-approved label, the court stated:

> If plaintiffs could recover large damage awards because the herbicide was improperly labeled under state law, the undeniable practical effect would be that state law *requires* ad-

ditional labeling standards not mandated by FIFRA; it cannot be presumed that businesses wish to bring about their own economic suicide.

*MacDonald*, 27 F.3d at 1025.

Finally, the Eighth Circuit, in *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887 (8th Cir. 1994), held, in a case also involving pool chemicals, that FIFRA preempted a consumer's claim based on inadequate labeling or failure to warn where the label in question had been found by the EPA to meet the requirements of FIFRA. The court based its decision on its preemption analysis in *National Bank of Commerce v. Kimberly-Clark Corp.*, 38 F.3d 988 (8th Cir. 1994), in which it stated that "in the context of FIFRA, under which the EPA is required to approve pesticide labels, 'actual agency approval eliminates any possible claims under state tort law for failure to comply with federal [labeling] requirements.' " *Bice*, 39 F.3d at 888 (quoting *National Bank of Commerce*, 38 F.3d at 994 n.4).

## D

Because FIFRA preempts the state tort claim underlying this case, and All-Pure, therefore, is not liable as a matter of law to Lundberg, there is not the joint liability required by RCW 4.22.040(1) to maintain the contribution action.[4] We therefore affirm the judgment of the Court of Appeals which upheld the trial court's granting of summary judgment and dismissing All-Pure's contribution claim against White.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.

---

[4]Because we hold that FIFRA preempts, as a matter of law, the underlying tort liability of All-Pure, we need not decide whether FIFRA also preempts the liability of White for the injury to Lundberg.