GARY E. ACKLES, APPELLANT, V.
RICHARD F. LUTTRELL ET AL., APPELLEES.
561 N.W.2d 573

Filed April 11, 1997.    No. S-95-257.

Mandy L. Strigenz and E. Terry Sibbernsen, of E. Terry Sibbernsen, P.C., and J. Marvin Weems, P.C., for appellant.

Brian D. Nolan, of Nolan, Roach & Lautenbaugh, and Daniel J. Connolly and Mark J. Carpenter, of Faegre & Benson, P.L.L.P., for appellee Elf Atochem North America, Inc.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and COADY, D.J.

CONNOLLY, J.

The appellant, Gary E. Ackles, brought this negligence and strict liability action against, among others, the appellee Pennwalt Corporation, now known as Elf Atochem North America, Inc. (Pennwalt), seeking damages for personal injuries sustained as the result of being exposed to an insecticide manufactured by Pennwalt. The district court granted Pennwalt's motion for summary judgment, finding that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) preempted Ackles' failure-to-warn and labeling-based claims. We affirm in part, because we conclude that FIFRA preempts labeling-based claims. However, we remand Ackles' negligence cause of action because it did not effectively state a cause of action, thereby making a summary judgment disposition inappropriate.

## BACKGROUND

On August 2, 1991, Ackles, a U.S. mail carrier, was delivering mail when he became exposed to Penncap-M which was being sprayed on an adjacent cornfield by a crop duster. Penncap-M is an insecticide manufactured by Pennwalt. Upon being exposed to the insecticide, Ackles experienced nausea, shaking, diarrhea, and vomiting. Since the exposure, Ackles has experienced severe physical ailments and has been declared disabled from his job as a postal carrier.

Penncap-M, like all insecticides, is subject to regulation and approval by the federal Environmental Protection Agency (EPA). See 7 U.S.C. § 136a(a) (1988). Pursuant to FIFRA,

7 U.S.C. § 136 et seq. (1988 & Supp. II 1990), the EPA must review and approve proposed labeling prior to any sale or distribution of the product. In the instant case, it is undisputed that the EPA reviewed and approved the Penncap-M labeling prior to Ackles' injury.

Ackles filed suit against the crop duster and Pennwalt. In his sixth amended petition, Ackles brought two causes of action against Pennwalt: one sounding in negligence, with the second based on strict liability in tort. The crux of these causes of action was that Pennwalt failed to warn or convey appropriate information regarding Penncap-M to those persons applying the insecticide. Ackles contended in both causes of action that this failure was the proximate cause of his personal injuries.

In its order, the district court overruled the crop duster's motion for summary judgment, but granted Pennwalt's motion for summary judgment, holding that

[Ackles'] failure to warn and labeling claims, found in . . . Causes of Action 2 and 3 of the 6th Amended Petition, present a state law challenge to the EPA-approved Penncap-M label, which challenge is expressly preempted by §136v(b) of the Federal Insecticide Fungicide and Rodenticide Act, 7 U.S. Code §136 et seq.

In a later order, the district court overruled Ackles' motion for new trial. Ackles appeals.

## ASSIGNMENTS OF ERROR

Ackles contends the district court erred in overruling his motion for a new trial because (1) it was error to find that his failure-to-warn claim, in the second cause of action, was expressly preempted by FIFRA and (2) it was error to find that his labeling claim, in the third cause of action, was also preempted by FIFRA.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion. *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996).

Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996); *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997); *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997).

## ANALYSIS

This appeal presents the issue of whether failure-to-warn and labeling-based claims brought against the manufacturer of a chemical that is regulated by FIFRA are preempted.

We begin with Ackles' assigned error concerning the granting of summary judgment in favor of Pennwalt against Ackles' strict liability cause of action. In this cause of action, Ackles contends Pennwalt is strictly liable for placing a defective product, namely Penncap-M, into the stream of commerce. According to the sixth amended petition, the defects referred to are the following, and Pennwalt was negligent:

a. In failing to adequately and properly warn users of, and other persons who will forseeably [sic] be endangered by, the product known as Penncap-M of the toxic nature of the product;

b. In failing to provide written instructions to aerial applicators of the product known as Penncap-M as to the manner in which the product should be applied; and,

c. In placing on the market for use a product which is toxic and creates an unreasonably dangerous condition when human beings such as the Plaintiff become exposed to the product.

The district court granted summary judgment in favor of Pennwalt on the third cause of action, holding that FIFRA preempted the claim. Ackles appeals that ruling, contending FIFRA does not preempt his labeling claim put forth in the third cause of action. We note that an examination of subparagraph c of paragraph 34 reveals that it deals exclusively with the allega-

tion that Penncap-M is "unreasonably dangerous" and as such does not appear, on its face, to be a labeling claim. However, because Ackles' sole assigned error concerning his strict liability action relates only to the district court's entering summary judgment against his labeling claim in the strict liability cause of action, we offer no opinion as to whether subparagraph c is itself preempted by FIFRA, insofar as that issue was not preserved for appeal. See *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996) (errors not assigned will not be considered by appellate court). Therefore, our concern in this appeal is whether FIFRA preempts labeling-based strict liability claims against a manufacturer of an insecticide, such as those claims set forth in subparagraphs a and b.

Originally enacted in 1947, FIFRA establishes a comprehensive scheme for the regulation of pesticide labeling and packaging. See *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S. Ct. 2476, 115 L. Ed. 2d 532 (1991). The administrative agency in charge of setting appropriate regulations is the EPA. Before a pesticide may be sold, it must be registered and its labeling approved by the EPA. § 136a(a). The review process requires that an applicant submit a proposed label to the EPA for approval. This label must address numerous concerns, including ingredients, directions for use, and adverse effects of the product. See, § 136a(c); 40 C.F.R. § 152.50 & part 156 (1996). In addition to the written material on the actual container, the term "label" also includes written, printed, or graphic material accompanying the container, to which reference is made. § 136(p). Once the label is approved, FIFRA makes it unlawful for any person to alter it without the prior approval of the EPA. See § 136j(a)(2)(A).

FIFRA specifically sets forth the authority the states shall have concerning the labeling of pesticides. Section 136v provides, in part:

(a) **In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA].

(b) **Uniformity**

> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

It is the preemption effect of subsection (b) that is at issue in this case. We are asked to determine whether this provision preempts a common-law cause of action brought against a manufacturer based on inadequate labeling if the manufacturer complied with the requirements of FIFRA.

The U.S. Supreme Court has not had the occasion to address the FIFRA preemption issue concerning common-law causes of action against an insecticide manufacturer. However, in 1992 the Court decided *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), which involved a suit brought against three cigarette manufacturers by the husband of a woman who died of lung cancer after having smoked for 40 years. The action was based on the common-law claims of design defects, failure to warn, express warranty, fraudulent misrepresentation, and conspiracy to defraud. The defendant manufacturers argued that the Public Health Cigarette Smoking Act of 1969 (Act) preempted the common-law causes of action. The preemption clause of the Act provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this [Act]." 15 U.S.C. § 1334(b) (1994).

A plurality of the Court held that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone*, 505 U.S. at 521. See, also, *id.* at 548 (Scalia, J., concurring in the judgment in part and dissenting in part, joined by Thomas, J.) (" 'the language of the [1969] Act plainly reaches beyond [positive] enactments' "). The Court went on to note, however, that the preemption clause does not preempt all common law, but, rather, only those actions predicated on a theory that necessarily interferes with the Act. Thus, it was determined that the plaintiff's failure-to-warn claim was preempted because it was specifically at odds with the labeling

requirement set forth in the Act, with which the manufacturer complied.

While not identical, the language employed in the preemption clause of FIFRA, § 136v(b) ("shall not impose or continue in effect any *requirements* for labeling" (emphasis supplied)), closely parallels that used in 15 U.S.C. § 1334(b) of the Act ("[n]o *requirement or prohibition* based on smoking and health shall be imposed under State law" (emphasis supplied)). Cognizant of this similarity, every federal court of appeals that has addressed the issue before us has, in the wake of the *Cipollone* decision, held that both failure-to-warn and labeling-based claims brought under common-law causes of action against manufacturers of pesticides are preempted by § 136v. See, *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69 (8th Cir. 1995); *Taylor Ag Industries v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995); *Lowe v. Sporicidin Intern.*, 47 F.3d 124 (4th Cir. 1995); *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887 (8th Cir. 1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993); *King v. E.I. Dupont De Nemours and Co.*, 996 F.2d 1346 (1st Cir. 1993), *cert. dismissed* 510 U.S. 985, 114 S. Ct. 490, 126 L. Ed. 2d 440; *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248; *Arkansas-Platte & Gulf v. Van Waters & Rogers*, 981 F.2d 1177 (10th Cir. 1993), *cert. denied* 510 U.S. 813, 114 S. Ct. 60, 126 L. Ed. 2d 30.

In addition, our research reveals that numerous state appellate courts in other jurisdictions have also held that FIFRA preempts labeling-based common-law causes of action. See, e.g., *Schuver v. E.I. Du Pont de Nemours & Co.*, 546 N.W.2d 610 (Iowa 1996); *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593 (Ind. App. 1996); *Hochberg v. Zoecon Corp.*, 421 Mass. 456, 657 N.E.2d 1263 (1995); *Quest Chemical Corp. v. Elam*, 898 S.W.2d 819 (Tex. 1995); *All-Pure Chemical Co. v. White*, 127 Wash. 2d 1, 896 P.2d 697 (1995); *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 886 P.2d 869 (1994).

Subsequent to the decisions of these courts, the U.S. Supreme Court has revisited the field of preemption analysis

with its decision in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996). The Court, in *Medtronic, Inc.*, was asked to determine whether the preemption clause of the Medical Device Amendments of 1976 (MDA) to the Federal Food, Drug, and Cosmetic Act precluded common-law damage claims against the manufacturer of a cardiac pacemaker which was regulated by the MDA. The preemption language at issue provided:

### (a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement under this chapter to the device . . . .

21 U.S.C. § 360k (1994).

Aware of its previous decision in *Cipollone*, the *Medtronic, Inc.* Court focused on the term "requirement" in concluding that the common-law actions against the manufacturer were not preempted. A plurality of the Court reasoned that

if Congress intended to preclude all common-law causes of action, it chose a singularly odd word with which to do it. The statute would have achieved an identical result, for instance, if it had precluded any "remedy" under state law relating to medical devices. "Requirement" appears to presume that the State is imposing a specific duty upon the manufacturer, and although we have on prior occasions concluded that a statute pre-empting certain state "requirements" could also pre-empt common-law damages claims, see *Cipollone*, 505 U.S., at 521-522 (opinion of STEVENS, J.), that statute did not sweep nearly as broadly as Medtronic would have us believe that this statute does.

518 U.S. at 487-88.

According to the plurality, the Act at issue in *Cipollone* prohibited state requirements that were "based on smoking and health." 15 U.S.C. § 1334(b). The plurality was quick to point out that those common-law claims not based on smoking and health were not preempted. Concerning the MDA in *Medtronic,*

*Inc.*, however, it was determined that an examination of the entire act makes it apparent that the term "requirements," as used throughout, "is linked with language suggesting that its focus is device-specific enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries." 518 U.S. at 489. However, five Justices of the Court reiterated the sentiments put forth in *Cipollone* that state common-law claims can be equated with state requirements. See *Medtronic, Inc., supra* (Breyer, J., concurring in part and concurring in the judgment) and (O'Connor, J., concurring in part and dissenting in part, joined by Rehnquist, C.J., and Scalia and Thomas, JJ.).

Thus, while at first blush *Medtronic, Inc.* appears to retreat from the preemption analysis put forth in *Cipollone*, it was the separate and distinct statutes that were involved in each case that were the determining factor. We therefore must determine whether the preemption language used in FIFRA preempts labeling-based common-law actions, as was the case in *Cipollone*, or whether FIFRA is more analogous to the statutory scheme of the MDA, which was at issue in *Medtronic, Inc.*

Two courts have recently examined FIFRA's preemption language in the aftermath of *Medtronic, Inc.* and have concluded that common-law actions for failure to warn and labeling-based claims are preempted. In *Lewis v. American Cyanamid Co.*, 294 N.J. Super. 53, 682 A.2d 724 (1996), the court ruled that a failure-to-warn claim against a manufacturer was preempted by FIFRA. Recognizing the U.S. Supreme Court's apparent retreat from preemption in *Medtronic, Inc.*, the court concluded that the preemption language employed in FIFRA was more similar to the statutory language examined in *Cipollone*. The court reasoned that

> [l]ike the preemption clause at issue in *Cipollone* and unlike that in *Medtronic*, the preemption provision of FIFRA is precise and explicit; *i.e.*, a State "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." Furthermore, FIFRA, like the *Cipollone* statutes, leaves unconstrained all state common law causes of action for defective products except

those based on inadequate labels. Finally, FIFRA has no escape clauses like the "grandfathering" and "substantially equivalent" provisions of MDA. The statute and regulations provide that substantially all pesticides are subject to extensive review by the EPA, and the EPA prescribes precise content for pesticide labels . . . .

294 N.J. Super. at 66, 682 A.2d at 731.

The *Lewis* court also expressly rejected the contention that a common-law action imposing damages was not a state "requirement," writing that

since FIFRA would preempt a state statute or regulation which imposes a monetary penalty on a manufacturer for not using a pesticide label different from that approved by the EPA, FIFRA also preempts a common law rule that would subject a manufacturer to a damage judgment for the same adherence to federal rather than state law.

294 N.J. Super. at 67, 682 A.2d at 732.

The First Circuit reached a similar conclusion in *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559 (1st Cir. 1996), wherein the plaintiff brought negligence and warranty causes of action against a builder after the plaintiff suffered injuries from the chemicals used to treat the wood. The builder filed a third-party complaint against the manufacturer of the chemical. The manufacturer contended that the actions were preempted by FIFRA. In determining that the third-party plaintiff's claims, as set forth in the complaint, were preempted, the court stated that "[i]t was once an open question, but is now settled by the Supreme Court in *Cipollone* and [*Medtronic, Inc.*], that 'requirements' in this context presumptively includes state causes of action as well as laws and regulations." 96 F.3d at 563. Thus, the court found that because the negligence and warranty actions dealt specifically with labeling-based claims, they were preempted. In so doing, the court was quick to point out that not every misdesign or mismanufacturing claim would be preempted by FIFRA, but, rather, only those that are labeling based.

Despite the strong trend finding preemption before *Medtronic, Inc.* and the adherence to the practice by two courts after *Medtronic, Inc.*, Ackles urges this court to take a different path and hold that his labeling-based strict liability claims are

not preempted. In support of this argument, Ackles asserts that in determining whether preemption exists, a court must examine only the language of the pertinent preemption clause, and that there exists a strong presumption against preemption. Because § 136v does not explicitly state that FIFRA preempts common-law causes of action concerning pesticide labeling, Ackles argues that his claim against Pennwalt should be allowed.

We disagree. If Ackles' labeling-based cause of action against Pennwalt were allowed to proceed and be successful, Pennwalt would be stuck between the proverbial rock and hard place in that it would be required to use the label approved by the EPA, yet pay damages because a jury determined that such label was not sufficient. This result would obviously run contrary to the intentions of Congress in passing FIFRA, namely, that labeling information will be regulated solely by the federal government.

We therefore hold, in accordance with virtually all courts that have ruled on this issue both before and after the U.S. Supreme Court's decision in *Medtronic, Inc.*, that Ackles' labeling-based cause of action against Pennwalt is preempted by FIFRA and that the district court was correct in entering a summary judgment in favor of Pennwalt on that cause of action.

In his remaining assignment of error, Ackles argues that the district court erred in dismissing his failure-to-warn claim alleged in the second cause of action, which was based on a negligence theory, because FIFRA does not preempt such claims.

Ackles' negligence cause of action against Pennwalt is set forth on pages 5 through 7 of the sixth amended petition, containing paragraphs 17 through 28. Paragraph 27 of the petition alleges that Ackles' injuries were a proximate result of Pennwalt's negligence. Subparagraphs a through i list the various manners in which Pennwalt was allegedly negligent. However, pursuant to a district court order dated October 25, 1994, paragraphs 19 through 27 of the sixth amended petition were stricken. No further amended petition was filed.

As a result of the October 25 order, there remain only three paragraphs within the second cause of action, which provide:

17. Plaintiff For his Second Cause of Action incorporates paragraphs 1 through 16 of his Introductory Allegations as if fully set forth herein.

18. Defendant Pennwalt manufactured, marketed and sold the product known as Penncap-M for use by individuals such as Defendants Brady Coen, Air Care, Inc., Pletcher Flying Service and Richard F. Luttrell.

. . . .

28. As a direct and proximate result of the Defendant Pennwalt Corporation, as set forth above, Plaintiff has sustained damages as set forth in paragraph 11, above.

The record does not contain an amended petition after the order of October 25.

In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997); *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997). Obviously, the three remaining paragraphs for Ackles' negligence cause of action fail to plead necessary elements. A bare allegation of proximate cause and damages without providing information as to what negligence occurred fails to set forth a negligence cause of action.

The record before us does not reflect whether Pennwalt's motion for summary judgment also challenged the sufficiency of the pleadings or the failure of the petition to state a cause of action in negligence. We have repeatedly held that a motion for summary judgment is not intended to be used as a substitute for a demurrer or motion for judgment on the pleadings. See *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). We have, however, held that when it is asserted in a motion for summary judgment that an opposing party has failed to state a cause of action, then the motion may be treated, as to that issue, as one for judgment on the pleadings. See *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). Unique to the instant case is the fact that Pennwalt has never challenged the sufficiency of Ackles' pleadings regarding the negligence cause of action. We are thus left with a procedural muddle.

A motion for summary judgment is to be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996); *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996). Because the petition fails to set forth a negligence cause of action in its current form, the entertaining of a motion for summary judgment was inappropriate. See, *Slagle v. J.P. Theisen & Sons*, 251 Neb. 904, 560 N.W.2d 758 (1997) (court may not enter summary judgment on issue not presented by pleadings); *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987). Remaining, however, is the issue of whether the negligence claim can be amended such that it does state a cause of action.

Consequently, we conclude that the district court erred in granting summary judgment on a petition which fails to state a cause of action. We therefore reverse the district court's granting of summary judgment against Pennwalt as it relates to the negligence cause of action and remand the cause with orders that Ackles be given an opportunity to amend his petition. For purposes of remand, we note that, in accordance with the foregoing analysis, a failure-to-warn or labeling-based cause of action is preempted by FIFRA.

## CONCLUSION

Through its enactment of FIFRA, Congress has preempted labeling-based common-law causes of action against chemical manufacturers that abide by the regulations of FIFRA. We therefore affirm the summary judgment in favor of Pennwalt regarding Ackles' strict liability cause of action. Because summary judgment was inappropriately entered against Ackles' negligence action, we remand the cause with directions.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.