BEN PFEIFER, JR., AND DONNA PFEIFER, HUSBAND AND WIFE,
APPELLANTS, V. E.I. DU PONT DE NEMOURS AND COMPANY, A
DELAWARE CORPORATION, APPELLEE.
606 N.W.2d 773

Filed February 11, 2000.   No. S-98-270.

George H. Moyer, Jr., of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellants.

Thomas M. Maul, of Grant, Rogers, Maul & Grant, and Ann Marie Hanrahan, of Faegre & Benson LLP, and Raymond Michael Ripple and Donna L. Goodman, of E.I. Du Pont de Nemours and Company, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

This is a suit brought by appellants Ben Pfeifer, Jr. (Pfeifer), and Donna Pfeifer for breach of express and implied warranties in the sale of Extrazine II DF, a herbicide manufactured by appellee E.I. Du Pont de Nemours and Company (Du Pont). The trial court granted summary judgment to Du Pont on the sole ground that the Pfeifers' claims were preempted by the Federal

Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq. (1994). We affirm.

## BACKGROUND

The Pfeifers appeal from the granting of summary judgment in favor of Du Pont. The Pfeifers had sued Du Pont for breach of express and implied warranties regarding its herbicide Extrazine. Pfeifer is a third-generation farmer and is certified to apply restricted use pesticides such as Extrazine. Extrazine is a herbicide registered with the Environmental Protection Agency (EPA), as required by FIFRA.

The Extrazine label in this case stated:

> When applied as a postemergence herbicide, Extrazine . . . is also active through foliage as well as through the roots. Yellowing and/or stunting of the crop may result from this treatment, particularly if cold, adverse growing conditions occur after application. Extended or extreme cold and wet conditions may reduce stands. Do not apply Extrazine . . . postemergence to a crop that is damaged or growing under stress.
>
> . . . .
>
> Do not apply this treatment under cold, wet, weather conditions or to corn growing under stress caused by weather, insects, disease, etc. Yellowing of the corn may result from this treatment, particularly if cold, adverse growing conditions occur after application. Extended or extreme cold and wet conditions may reduce stand.
>
> . . . .

### NOTICE OF WARRANTY

> Du Pont warrants that this product conforms to the chemical description on the label thereof and is reasonably fit for the purposes stated on such label only when used in accordance with the directions under normal use conditions. It is impossible to eliminate all risks inherently associated with the use of this product. Crop injury, ineffectiveness or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application, all of which are beyond the control of

Du Pont. In no case shall Du Pont be liable for consequential, special or indirect damages resulting from the use or handling of this product. All such risks shall be assumed by the buyer. DU PONT MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE NOR ANY OTHER EXPRESS OR IMPLIED WARRANTY EXCEPT AS STATED ABOVE.

The Pfeifers allege in their amended petition that Pfeifer purchased the Extrazine from the Farmers Co-op Association in Lindsay, Nebraska. The petition alleges that the co-op employee from whom Pfeifer purchased the Extrazine, Gary Jarecki, consulted literature published by Du Pont that described Extrazine as, among other things, suitable for controlling weeds in corn. The petition alleges that this literature was separate and distinct from the labels on the Extrazine bags and that Pfeifer did not receive the actual labels attached to the Extrazine until he took delivery of the product.

Jarecki states in an affidavit that he had been informed at sales meetings sponsored by Du Pont representatives that Extrazine was suitable for controlling weeds in corn crops and that he checked his recollection of this information against the Du Pont catalog before making his recommendation to Pfeifer. Jarecki admits in a separate affidavit that the catalog was essentially a collection of product labels, and that both the information received at the sales meetings and that obtained from the catalog were entirely consistent with the information contained in the product label.

The Pfeifers allege that Pfeifer purchased Extrazine in reliance on Jarecki's statements and applied Extrazine to 152 acres of his 1992 corn crop as a postemergence treatment. The Pfeifers claim that the product reduced their corn stand from a population of 28,000 plants per acre to 13,000 plants per acre, resulting in lost profits of $22,502.68. The Pfeifers allege that Pfeifer applied the herbicide as directed by the label on the container in which it came.

The EPA-approved label of the Extrazine contained directions for use, as well as various warnings and environmental information required by FIFRA. The label also generally

described the product as "a selective herbicide for the control of annual grasses and broadleaf weeds in field corn, popcorn, and sweet corn."

Du Pont moved for summary judgment on the ground of FIFRA preemption. The trial court granted Du Pont's motion, finding that the Pfeifers' warranty claims were based on the herbicide's labeling and were therefore preempted by FIFRA under *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255.

## ASSIGNMENT OF ERROR

The Pfeifers assign that the trial court erred in granting Du Pont's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999); *Nebraska Popcorn, Inc. v. Wing, ante* p. 60, 602 N.W.2d 18 (1999).

■ When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State ex rel. City of Alma v. Furnas Cty. Farms*, 257 Neb. 189, 595 N.W.2d 551 (1999); *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999).

## ANALYSIS

### FIFRA's Preemptive Effect on State Breach of Warranty Claims

■ Analysis of FIFRA preemption in Nebraska begins with *Ackles v. Luttrell, supra*. In *Ackles*, this court held that failure to warn and labeling-based claims brought under common-law causes of action against manufacturers of pesticides are preempted by FIFRA. This is so because FIFRA mandates that certain information be placed on the labels of pesticides and herbicides. Courts have uniformly found that allowing state causes of

action to be based upon language mandated by the federal government would amount to a state law requirement regarding such language. See, e.g., *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69 (8th Cir. 1995); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir. 1993); *Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248. FIFRA expressly prohibits states from making such requirements. "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b).

*Ackles v. Luttrell, supra,* did not specifically address warranty claims. The holding in *Ackles* was addressed solely to a claim of insufficient labeling. Nevertheless, the logic behind the holding applies equally to warranty claims if such claims are solely based on federally mandated label statements:

> If Ackles' labeling-based cause of action against Pennwalt were allowed to proceed and be successful, Pennwalt would be stuck between the proverbial rock and hard place in that it would be required to use the label approved by the EPA, yet pay damages because a jury determined that such label was not sufficient. This result would obviously run contrary to the intentions of Congress in passing FIFRA, namely, that labeling information will be regulated solely by the federal government.
>
> We therefore hold, in accordance with virtually all courts that have ruled on this issue both before and after the U.S. Supreme Court's decision in *Medtronic, Inc.* [*v. Lohr,* 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)], that Ackles' labeling-based cause of action against Pennwalt is preempted by FIFRA . . . .

*Ackles v. Lutrell,* 252 Neb. 273, 283, 561 N.W.2d 573, 579 (1997).

Applying FIFRA to warranties, we find that manufacturers would be equally between a rock and a hard place if they were forced by the federal government to make statements regarding the use of the manufacturers' products, and the state then treated such statements as warranties and allowed juries to

award damages based upon them. Thus, to the extent that the Pfeifers are alleging that the Extrazine label constituted an express or implied warranty, such a cause of action must be preempted by FIFRA. Otherwise, success on such claims would subject Du Pont to warranty liability for statements that it was forced to make in order to legally sell its product.

Pfeifer testified that Jarecki told him that Extrazine was suitable for controlling weeds in corn crops. Jarecki's affidavit stated, "I suggested to him that Extrazine II DF would be an appropriate application for his problem." Jarecki testified that the statement he made to Pfeifer was based on the agricultural herbicide labels. Jarecki also testified that he referred to a Du Pont product catalog, which is generally composed of the Du Pont product labels. What Jarecki said to Pfeifer is nothing more than a recitation of what is on the label, and as such, the Pfeifers' claim for a warranty based on what Jarecki said to Pfeifer is preempted under FIFRA. The granting of the motion for summary judgment to Du Pont on this issue was correct and is affirmed.

### BREACH OF IMPLIED WARRANTY CLAIM

The Pfeifers also allege that Du Pont breached an implied warranty that "the product was suitable and fit for the purposes for which it was sold and intended to be used." The product in this case was a herbicide suitable for controlling weeds in corn. Therefore, the ordinary purpose was the control of weeds in corn. Neb. U.C.C. § 2-315 (Reissue 1992) states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

In this case, Pfeifer testified as follows:

> [Defendant's attorney] Q. Is there something that DuPont should have told you, as you sit here today, that they didn't tell you, that would have made a difference in how you applied the product or what you did with the product or —

A. I guess I don't understand what they mean by — for one thing, on their postemergence says "do not apply under cold and wet weather conditions." Well, I didn't, it was warm and dry. Later on it did turn cold and wet, they don't say how much later on if it turns cold and wet, and they don't define cold or wet. You know, they could — cold or wet to them might mean a month, or might mean a month to me or, you know, who knows, you know. You define cold and wet and define how long and, like I say, it says there, don't put it on corn under these conditions. Well, it was in the mid 80s and that's pretty warm for — for May, and it was dry, too.

Q. Okay. And that's your recollection, although you didn't take notes of the weather conditions at the time?

A. Yes.

Q. Okay. Fair enough. So, if I understand — and I appreciate the fact that your attorney may present some other legal theory or may offer expert testimony, but, so I understand, your complaint with the product is you don't feel as though the label instructions were clear enough or definite enough for your use of the product?

[Plaintiffs' attorney]: I don't know that it's the instructions exactly. I mean —

[Defendant's attorney] Q. Well, the information contained within this pamphlet that accompanies purchase of the product; is that your gripe?

A. Yes.

. . . .

[Defendant's attorney] Q. In paragraph 7 of your [original] petition, you state that the defendant failed to warn plaintiffs that such change in the weather would adversely affect the growth of plaintiffs' crop; is that your complaint with the product in this case?

A. My complaint is that the corn was damaged, the yield was down, and, as far as I'm concerned, their label doesn't say — doesn't — you know, it says if it turns cold. Well, what's cold, and, you know, how long after is cold. You put it on when it's 80 degrees, that's not cold.

Q. Okay. My question is: Is that what you're complaining about, what the label said, or what it didn't say?

A. Basically.

[Plaintiffs' attorney]: Maybe he has other complaints, too, counsel, which have to do with certain expert witnesses, and we may decide to amend his petition. I'm just giving you fair warning.

[Defendant's attorney] Q. As you sit here today, Mr. Pfeifer, can you think of anything else wrong with the product, that you're aware of, that you would complain about?

A. Well, no.

■ The above testimony of Pfeifer shows that his complaints were label based. If the action is label based, it is preempted by FIFRA. See, e.g., *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559 (1st Cir. 1996) (favorably cited by this court in *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), that because negligence and warranty actions dealt specifically with labeling-based claims, they were preempted by FIFRA); *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69 (8th Cir. 1995) (express warranty claim based on label's statement with regard to herbicide's carryover effect is preempted by FIFRA); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 114 S. Ct. 300, 126 L. Ed. 2d 248 (1993) (to extent implied warranty claim depends upon inadequacies in labeling or packaging, § 136v of FIFRA preempts claim). Therefore, we determine that the Pfeifers' implied warranty is preempted.

## CONCLUSION

The Pfeifers' claim for breach of express warranty was preempted by FIFRA. Therefore, the trial court properly granted the motion for summary judgment to Du Pont on this issue.

As to the Pfeifers' claim of breach of implied warranty of fitness for a particular purpose, we determine that this claim is also preempted by FIFRA for the reason that Pfeifer's testimony indicates that the claim is label based.

AFFIRMED.

GERRARD, J., not participating.