STATE OF NEBRASKA ON BEHALF OF CHRISTOPHER S. DADY, A MINOR CHILD, APPELLEE, V. MICHAEL L. SNELLING, APPELLANT.

637 N.W.2d 906

Filed December 18, 2001. No. A-01-205.

Sheila C. Stoffel and Marian G. Heaney, of Nebraska Legal Services, for appellant.

Robert G. Tribolet, of Child Support Services of Nebraska, for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Michael L. Snelling appeals the order of the district court for Douglas County which determined that he is the biological father of Christopher S. Dady and ordered Snelling to pay child support. On appeal, Snelling contends that the trial court erred in concluding that genetic testing results alone are sufficient evidence to establish paternity. Finding no error, we affirm the judgment of the trial court.

## BACKGROUND

On May 10, 2000, the State of Nebraska filed a petition for establishment of paternity and support on behalf of Christopher, born March 29, 1992. The petition stated (1) that Kristine L. Manard is the mother of Christopher; (2) that during the probable period of conception of Christopher, Snelling and Manard had sexual intercourse with each other, and that as a result of which, Manard became pregnant and gave birth to Christopher; (3) that Snelling is the father of Christopher; (4) that Christopher is in need of financial support from Snelling; and (5) that Snelling is capable of providing such support for Christopher. The State filed a motion for genetic testing on the same date. Pursuant to a stipulation, Snelling, Manard, and Christopher submitted to genetic testing. The results of the genetic testing concluded that Snelling "cannot be excluded as the biological father of the child, CHRISTOPHER S. DADY, since they share genetic markers. . . . [T]he probability of paternity is 99.99%, as compared to an untested, unrelated man of the Caucasian population."

Subsequently, the district court referee conducted a hearing on the petition. The referee received the written results of the genetic testing into evidence over Snelling's objection. Neither Snelling nor Manard testified as to the sexual relations, or the absence of relations, between the two of them. The referee recommended that the court find that Snelling is the biological father of Christopher and owes a corresponding duty of support.

Snelling filed an exception to the referee's report, and a trial was conducted before the district court. Snelling argued that the referee improperly considered the results of the genetic testing because there must first be evidence of sexual intercourse between Snelling and Manard before the genetic testing can be considered. The trial court overruled Snelling's exception and entered an order finding Snelling to be Christopher's father and ordering him to pay child support. Snelling appeals.

## ASSIGNMENT OF ERROR

Snelling assigns that the trial court erred in concluding that genetic testing results alone are sufficient evidence to establish paternity.

## SCOPE OF REVIEW

In a filiation proceeding, the appellate court reviews the trial court's judgment de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998); *Lancaster v. Brenneis*, 227 Neb. 371, 417 N.W.2d 767 (1988). When reviewing a question of law, however, an appellate court reaches a conclusion independent of the lower court's ruling. *Springer v. Bohling*, 259 Neb. 71, 607 N.W.2d 836 (2000); *Pfeifer v. E.I. Du Pont De Nemours & Co.*, 258 Neb. 756, 606 N.W.2d 773 (2000).

## ANALYSIS

Snelling argues that because there was no evidence of sexual intercourse between Snelling and Manard, the genetic testing results alone were inadequate to establish paternity. Snelling relies on *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996). In that case, Rial appealed a judgment that was entered against him in accordance with a jury verdict finding him to be the biological father of Joseph. Joseph's mother testified that she and Rial dated from July 1987 until early October 1988 and that during that time, she and Rial would have sexual intercourse once or twice a week. She also testified that she did not have sexual intercourse with any other man while she was involved with Rial. Rial admitted having sexual intercourse with the mother and testified that the last time he had sexual intercourse with her was in late July 1988. Joseph was born on May 30, 1989. The results of genetic testing were also admitted into evidence. On appeal, Rial argued that the trial court erred in refusing certain proffered jury instructions. Rial argued that the trial court should have given the following proposed instruction: " 'If you find that the Defendant had vaginal sexual intercourse with [the mother] at or about the time when . . . the child was conceived, you may then consider the probability of paternity results.' " *Id.* at 6-7, 554 N.W.2d at 774. The court gave an instruction which stated: " 'If you find that the defendant had sexual intercourse with [the mother] at or about the time when Joseph . . . was conceived, you may then consider the probability of

paternity results.'" *Id.* at 7, 554 N.W.2d at 774. The Nebraska Supreme Court found that Rial had waived any error with respect to the instruction given because of his failure to object to such instruction and further found that the trial court did not err in refusing Rial's proposed instructions because "the instructions given by the court adequately informed the jury it had to first find Rial engaged in sexual intercourse with [the mother] before it could consider the paternity testing results." *Id.* at 8, 554 N.W.2d at 774.

In the instant case, the trial court disregarded *State on behalf of Joseph F. v. Rial, supra,* and instead relied on Neb. Rev. Stat. § 43-1415 (Reissue 1998), which provides:

(1) The results of the tests, including the statistical probability of paternity, shall be admissible evidence and, except as provided in subsection (2) of this section, shall be weighed along with other evidence of paternity.

(2) When the results of tests, whether or not such tests were ordered pursuant to section 43-1414, show a probability of paternity of ninety-nine percent or more, there shall exist a rebuttable presumption of paternity.

(3) Such evidence may be introduced by verified written report without the need for foundation testimony or other proof of authenticity or accuracy unless there is a timely written request for personal testimony of the expert at least thirty days prior to trial.

We conclude that § 43-1415 rather than *State on behalf of Joseph F. v. Rial* controls the outcome of the present case. The *Rial* opinion does not cite to or mention § 43-1415. However, its holding concerning the previously discussed jury instruction is consistent with the language in § 43-1415. At the time of Rial's trial, which was October 29, 1993, § 43-1415 did not contain the rebuttable presumption language now found in subsection (2). At the time of Rial's trial, § 43-1415 (Reissue 1993) stated:

The results of the tests, including the statistical probability of paternity, shall be admissible evidence and shall be weighed along with other evidence of paternity. Such evidence may be introduced by verified written report unless there is a timely request for personal testimony of the expert at least thirty days prior to trial.

At the time, § 43-1415 required that results of genetic tests be weighed along with other evidence under all circumstances, no matter what the probability of paternity was. Therefore, when the Nebraska Supreme Court considered the jury instructions that were given at Rial's trial, the court's determination that other evidence of paternity must be offered before the genetic testing results have any meaning was not at odds with the version of § 43-1415 in effect at the time.

■ The current version of § 43-1415, which became operative July 1, 1994, states that results of genetic tests are to be weighed along with other evidence of paternity, except when the results of tests "show a probability of paternity of ninety-nine percent or more, there shall exist a rebuttable presumption of paternity." Therefore, when genetic tests show a probability of paternity of 99 percent or more, a rebuttable presumption is created without the need for any other evidence.

In the present case, pursuant to § 43-1415(1) and (2), the results of the genetic tests were admissible and created a rebuttable presumption of paternity because the results showed that "the probability of paternity is 99.99%, as compared to an untested, unrelated man of the Caucasian population." Snelling did not present any evidence to rebut the presumption that he is the father of Christopher. In addition, under § 43-1415(3), evidence of genetic testing results can be introduced without foundational testimony or other proof of authenticity or accuracy in regard to the testing itself, unless there is a written request for personal testimony of the expert at least 30 days prior to trial. Snelling did not make such a written request. Therefore, we affirm the order of the district court finding Snelling to be the biological father of Christopher and ordering Snelling to pay child support.

## CONCLUSION

The trial court did not err in concluding that evidence of genetic testing results alone was sufficient evidence to establish paternity because the results of the tests showed a probability of paternity of 99 percent or more, creating a rebuttable presumption under § 43-1415 that Snelling is Christopher's biological father.

AFFIRMED.