Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/18/2023 08:04 AM CDT

Evan S., appellant, v.
Laura H., appellee.
___ N.W.2d ___

Filed April 11, 2023.    No. A-22-230.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court
   reviews a district court's order granting a motion to dismiss de novo,
   accepting the allegations in the complaint as true and drawing all rea-
   sonable inferences in favor of the nonmoving party.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a ques-
   tion of law. On a question of law, an appellate court is obligated to
   reach a conclusion independent of the determination reached by the
   court below.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
   presented for review, an appellate court must determine whether it
   has jurisdiction.
4. **Limitations of Actions: Jurisdiction.** The failure to comply with a
   statute of limitations is not an issue of subject matter jurisdiction.
5. **Jurisdiction: Paternity.** District courts have subject matter jurisdiction
   of actions to determine paternity of a child.
6. **Limitations of Actions: Pleadings.** A challenge that a pleading is
   barred by the statute of limitations is a challenge that the pleading fails
   to allege sufficient facts to constitute a claim upon which relief can
   be granted.
7. **Paternity: Statutes.** Paternity proceedings are purely statutory, and
   because such statutes modify the common law, they must be strictly
   construed.
8. **Statutes.** Statutory language is to be given its plain and ordinary
   meaning.
9. **Presumptions: Proof: Words and Phrases.** A presumption is the
   evidentiary assumption of one fact (the presumed fact) based upon
   proof of other facts (the predicate facts). The presumed fact is taken

as true unless the opponent of the presumed fact meets a particular burden of proof.

10. **Statutes: Legislature: Presumptions: Intent.** In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject. The Legislature is also presumed to know the language used in its statutes, and if a subsequent act on the same or similar subject uses different terms in the same connection, the court must presume that a change in the law was intended.

11. **Paternity: DNA Testing: Presumptions.** While a genetic test result may be evidence of paternity and can establish a rebuttable presumption of paternity, it is not in itself a legal determination of paternity in the same way as a signed and notarized acknowledgment of paternity may be.

12. **Constitutional Law: Paternity: Time.** Neb. Rev. Stat. § 43-1411 (Cum. Supp. 2022) is constitutional because it provides sufficient time for a natural parent, whether having custody of the child or not, to assert his or her rights.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Nicholas R. Glasz for appellant.

Laura A. Lowe, P.C., for appellee.

Moore, Riedmann, and Bishop, Judges.

Bishop, Judge.

## I. INTRODUCTION

Evan S. filed a complaint in October 2021 against Laura H. for "Paternity[,] Custody, Visitation and Support" of a minor child who was born in May 2017. The complaint was filed approximately 5 months past the 4-year statute of limitations to establish paternity set forth in Neb. Rev. Stat. § 43-1411 (Cum. Supp. 2022). The Lancaster County District Court dismissed the case for "lack of subject matter jurisdiction" without any further explanation. On appeal, Evan contends the district court erred in dismissing the case, because genetic testing done within weeks of the child's birth established his paternity, thus making the statute of limitations inapplicable.

He also argues that § 43-1411 violates the Nebraska and U.S. Constitutions. Although we disagree with the district court's stated basis for dismissal, we nevertheless affirm the court's dismissal of the action.

## II. BACKGROUND

In Evan's complaint against Laura, brought pursuant § 43-1411, he alleged that the parties were never married but that N.H. "was born to the relationship between [Evan] and [Laura]" in May 2017. Evan claimed that paternity of N.H. had been established because he "previously submitted to [a] genetic test" and the results "established him to be the biological father" of N.H. Evan attached as an exhibit to his complaint a notarized "DNA Test Report" dated May 30, 2017, which indicates that there is a "99.99999998% probability" that Evan is N.H.'s biological father. Evan requested that the district court determine paternity of N.H., award the parties joint legal and physical custody, order a parenting plan, determine child-related financial responsibilities, and order child support.

On November 10, 2021, Laura filed a "Special Appearance of Counsel" and a motion to dismiss Evan's complaint for not being filed within the 4-year statute of limitations set forth in § 43-1411.

On November 16, 2021, the district court held a hearing on Laura's motion to dismiss. Laura and Evan each appeared with counsel. Laura entered into evidence a sworn affidavit wherein she detailed her history with Evan. She stated that at the time of N.H.'s birth, Laura was legally separated from her husband, but not yet divorced; she and Evan "dated off and on for about a year," and while they were living together, she became pregnant. Because she was still legally married when N.H. was born, action was taken to have an order entered in Lancaster County District Court, case No. CI 17-2784, to exclude Laura's husband as N.H.'s father. The genetic test referenced above showing the 99.99-percent probability that

Evan was the father was submitted to the court at that time to support the order entered in August 2017 excluding Laura's husband as N.H.'s father.

Laura claimed Evan moved out when she was 6 months pregnant, after which he moved to Colorado. Evan returned to Nebraska "about 2 weeks after [N.H.] was born," stayed for "a week or two," and then returned to Colorado. According to Laura, Evan saw N.H. only "periodically" for 4 years when he was living in Colorado, and then in August 2021, he "moved back wanting to be a dad to [N.H.]" Evan was present on N.H.'s first birthday, would visit two to three times a year, and would stay with Laura. Laura also traveled to Colorado "occasionally." Laura permitted Evan to take N.H. "on a hiking/backpacking trip in Colorado during the summer of 2020," but this was the only time Evan had N.H. "for more than a day or 2 overnight." Laura stated that Evan "did provide some money to help with [N.H.], but [that] it was never consistent."

Laura further averred that "Child Support Enforcement filed 2 different cases against" Evan in Lancaster County District Court, one in August 2017 and one in April 2018, seeking to establish paternity and establish child support. However, according to Laura, both cases were dismissed for lack of service. Attempts at service had been made in Colorado, as well as at Evan's parents' house in Nebraska; Evan's parents either could not or would not provide a Colorado address to assist in effecting service. Laura contended, "Evan knew that I was trying to get child support established and every time I got his address, he would move before he was served."

In August 2021, Evan moved back to Lincoln, Nebraska, and stayed with Laura "for about 2 weeks." Evan helped "watch the kids" while Laura was working in Omaha, Nebraska. According to Laura, Evan "wanted to make that a permanent arrangement," and when she told him "no," Evan "became very nasty, calling [her] names and berating [her] in front of the children." Laura described other instances in which Evan engaged in inappropriate and violent behavior, as well

as described an example of her own poor judgment in driving while intoxicated with "the kids . . . in the car."

Evan introduced, and the court received, the "DNA Test Report" that was attached to his complaint. In arguing her motion, Laura again pointed out that the 4-year limitations period had expired by the time Evan filed his complaint. In response, Evan claimed that the statute of limitations for paternity actions did not apply because he "already had paternity established." The court requested that the parties brief the motion and stated that it would take the matter under advisement.

On March 4, 2022, the district court entered an "Order to Dismiss," stating the following:

> On November 16, 2021, the above matter came on for hearing on [Laura's] Motion to Dismiss. . . . Exhibits were offered and received. Arguments were heard, and the parties were given time to brief the motion. After receipt of briefs, the court considered all of the evidence, arguments and briefs, and now finds that the case should be and hereby is dismissed for lack of subject matter jurisdiction.

Evan appeals.

### III. ASSIGNMENTS OF ERROR

Evan assigns, consolidated and restated, that the district court erred in (1) dismissing his complaint for lack of subject matter jurisdiction and (2) applying the 4-year statute of limitations set forth in § 43-1411 when paternity had already been established by the "DNA test," which he claims "creates the same or greater presumption of paternity as a notarized acknowledgment of paternity." Evan also contends that § 43-1411 violates the Nebraska and U.S. Constitutions.

### IV. STANDARD OF REVIEW

[1] An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting the allegations

in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

[2] Statutory interpretation presents a question of law. See, *State ex rel. Wagner v. Gilbane Bldg. Co.*, 280 Neb. 223, 786 N.W.2d 330 (2010); *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

## V. ANALYSIS

### 1. Jurisdiction

[3] Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction. *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020). In its March 4, 2022, order, the district court granted Laura's "Motion to Dismiss," citing a lack of subject matter jurisdiction. The court provided no further explanation, so we can only conclude that its decision was based upon a finding that the 4-year statute of limitations barred Evan's claim. That was the issue raised in Laura's motion to dismiss, and it was the focus of discussion during the hearing on that motion.

[4-6] However, dismissal for lack of subject matter jurisdiction was not a proper basis for dismissal in this case; the appropriate ground for dismissal would have been failure to state a claim upon which relief can be granted. The Nebraska Supreme Court has made it clear that the "failure to comply with a statute of limitations is not an issue of subject matter jurisdiction." *Benjamin M.*, 307 Neb. at 739, 950 N.W.2d at 387. "We have consistently held that the district court has subject matter jurisdiction of an action to determine paternity of a child." *Id.* at 738, 950 N.W.2d at 386. A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to allege sufficient facts to constitute a claim upon which relief can be granted. *Benjamin*

*M., supra*. However, in *Benjamin M.*, because neither party raised the issue of subject matter jurisdiction on appeal, the Supreme Court proceeded with its analysis as if the district court had dismissed the case on the ground of failure to state a claim upon which relief could be granted. We will do the same here.

However, for the sake of completeness, we note Evan did assign as error that the district court erred in dismissing his case "for lack of subject matter jurisdiction," but he did not provide any argument specific to that issue, other than to argue that the court had "jurisdiction pursuant to Neb. Rev. Stat. § 43-1238 as Nebraska is the home state of the child on the date of the commencement of the proceeding." Brief for appellant at 7. However, as pointed out by Laura in her brief, Neb. Rev. Stat. § 43-1238 (Cum. Supp. 2022) of Nebraska's Uniform Child Custody Jurisdiction and Enforcement Act relates to a court's jurisdiction over initial child custody matters and is not applicable to whether the 4-year statute of limitations contained in § 43-1411 bars Evan's action to establish paternity. And although the district court mistakenly referenced a lack of subject matter jurisdiction, it is evident from the arguments made before the district court and in arguments on appeal that the dismissal of Evan's complaint turned on whether it was barred by the 4-year statute of limitations. Accordingly, we will proceed to address those arguments.

## 2. STATUTE OF LIMITATIONS FOR PATERNITY ACTIONS

Actions to determine paternity are governed by Neb. Rev. Stat. §§ 43-1401 to 43-1418 (Reissue 2016 & Cum. Supp. 2022). The statute of limitations for establishing paternity by judicial determination is provided in § 43-1411. Since the time Evan filed his complaint in October 2021, § 43-1411 was reformatted and what was subsection (2) became subsection (3). Because no substantive amendment was made, we cite to the statute in its current version, which states in relevant part:

(1) A civil proceeding to establish the paternity of a child may be instituted, in the court of the district where the child is domiciled or found or, for cases under the Uniform Interstate Family Support Act, where the alleged father is domiciled, by:

(a) The mother or the alleged father of such child, either during pregnancy or within four years after the child's birth, unless:

(i) A valid consent or relinquishment has been made pursuant to sections 43-104.08 to 43-104.24 or section 43-105 for purposes of adoption; or

(ii) A county court or separate juvenile court has jurisdiction over the custody of the child or jurisdiction over an adoption matter with respect to such child pursuant to sections 43-101 to 43-116[.]

Section 43-1411(3) provides that when a juvenile court already has jurisdiction over a child, "a person claiming to be the biological father of a child . . . may file a complaint to intervene in such juvenile proceeding to institute an action to establish the paternity of the child." No statute of limitations appears to be associated with that latter provision. However, since there is no juvenile court alleged to have jurisdiction in a proceeding involving N.H., § 43-1411(3) is not applicable here. Accordingly, we consider only whether the 4-year statute of limitations set forth in § 43-1411(1)(a) applies. Evan argues that the 4-year statute of limitations should not apply to his case, because paternity had already been established by the "DNA test," which he claims "creates the same or greater presumption of paternity as a notarized acknowledgment of paternity."

(a) Presumptions of Paternity

Evan cites to *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020), in support of his position that paternity had already been established by the genetic testing done in 2017, just weeks after N.H. was born, and that therefore,

the 4-year statute of limitations to establish paternity should be inapplicable.

However, *Benjamin M., supra*, did not involve someone simply submitting to genetic testing; rather, in that case, the father had executed a notarized acknowledgment of paternity for both of his children within a day or two after they were born. More than 4 years later, he filed a complaint seeking to establish paternity, child custody, child support, and parenting time. The district court dismissed the case because the action was filed after the 4-year limitations period to establish paternity had expired. The Nebraska Supreme Court determined that the district court erroneously dismissed the case, because the notarized acknowledgments of paternity constituted legal determinations of the appellant's paternity. Thus, the only issues that remained were child custody, child support, and parenting time.

In reaching its conclusion in *Benjamin M., supra*, the Supreme Court looked to the language of the paternity statutes, including § 43-1409, which explicitly states that after the expiration of a 60-day rescission period, "a signed, notarized acknowledgment is considered a legal finding which may be challenged only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger." The Supreme Court held that "an unrescinded and unchallenged acknowledgment of paternity operates as a legal finding of paternity and that the proper legal effect of a signed, notarized acknowledgment is a finding that the individual who signed as the father is in fact the legal father." *Benjamin M.*, 307 Neb. at 740, 950 N.W.2d at 387-88. Pointing out that it had previously found that the "establishment of paternity by acknowledgment is the equivalent to the establishment of paternity by judicial proceeding," it therefore concluded that based on the acknowledgments of paternity in that case, the father's complaint to establish paternity should have been treated as a complaint to determine custody and support. *Id*. at 741, 950 N.W.2d at 388. When paternity has been established by the

"execution of unrescinded and unchallenged acknowledgments of paternity," paternity is "no longer an issue," *id.* at 743, 950 N.W.2d at 389, and the "court should treat the action as an action solely to determine custody and support," *id*. at 744, 950 N.W.2d at 390. The Supreme Court specifically found that the 4-year statute of limitations in § 43-1411 did not bar an action for child custody and child support for a father who executed an acknowledgment of paternity.

Evan seeks the same outcome here, arguing that a "DNA test creates the same or greater presumption of paternity as a notarized acknowledgment of paternity" and "genetic testing is the . . . most advanced and accurate technology to determine parentage." Brief for appellant at 6-7. As such, he claims the "DNA Test Report" finding a 99.99-percent probability that he is the biological father of N.H. constituted a legal determination of his paternity. Thus, after quoting from *Benjamin M., supra*, Evan asks this court to apply that precedent here, and "treat his action as an action to determine custody, visitation and support." Brief for appellant at 6.

[7,8] While there is a persuasive logic to Evan's argument that if an acknowledgment of paternity qualifies as a legal determination of paternity, then a genetic test showing a 99.99-percent probability of paternity should similarly qualify, we must nevertheless constrain ourselves to the plain language of the paternity statutes. See *State on behalf of Miah S. v. Ian K.*, 306 Neb. 372, 945 N.W.2d 178 (2020) (paternity proceedings are purely statutory, and because such statutes modify common law, they must be strictly construed; statutory language is to be given its plain and ordinary meaning). And while there are similarities between the statutes addressing acknowledgments of paternity and genetic testing, there is also one significant distinction. We will start with the similarities.

[9] Evan is correct that when the results of a genetic test "show a probability of paternity of ninety-nine percent or more, there shall exist a rebuttable presumption of

paternity." § 43-1415(2). Likewise, a signed and notarized acknowledgment of paternity "shall create a rebuttable presumption of paternity as against the alleged father." § 43-1409. Accordingly, a statutory basis exists for a rebuttable presumption of paternity under either of these two alternatives. However, a rebuttable presumption by itself does not automatically result in a legal determination of paternity. "Broadly, a presumption (sometimes called a rebuttable presumption) is the evidentiary assumption of one fact (the presumed fact) based upon proof of other facts (the predicate facts)." *Hopkins v. Hopkins*, 294 Neb. 417, 428, 883 N.W.2d 363, 373 (2016). As applicable here, there is a presumed fact of paternity based upon proof of a genetic test showing a 99-percent probability of paternity or a signed and notarized acknowledgment of paternity. "The presumed fact is taken as true unless the opponent of the presumed fact meets a particular burden of proof." *Id*. "In all cases not otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 2016).

Additionally, to prove the predicate facts, a genetic test "shall be admissible evidence" and "may be introduced by verified written report without the need for foundation testimony or other proof of authenticity or accuracy unless there is a timely written request for personal testimony of the expert at least thirty days prior to trial." § 43-1415. See, also, *State on behalf of Dady v. Snelling*, 10 Neb. App. 740, 637 N.W.2d 906 (2001) (despite objection, genetic test showing 99.99-percent probability of paternity created rebuttable presumption and was sufficient evidence to establish paternity without need for other evidence). Similarly, a "signed and notarized acknowledgment of paternity . . . shall be admissible in evidence in any proceeding to establish paternity without the need for foundation testimony or other proof of authenticity or

accuracy." § 43-1412(1). See, also, *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014) (§ 43-1409 creates evidentiary rebuttable presumption of paternity and provides that acknowledgment is admissible evidence). Again, the statutes related to genetic testing and an acknowledgment of paternity are similar in that they provide for the admissibility of such evidence without the need for foundation testimony or other proof of authenticity or accuracy, thus clearing the way for a legal determination of paternity.

However, despite these similarities, the Nebraska Legislature elected to treat a signed and notarized acknowledgment of paternity differently from genetic testing in a significant aspect. In § 43-1409, a person signing an acknowledgment of paternity has the right to rescind that acknowledgment within the earlier of 60 days or the date of an administrative or judicial proceeding relating to the child. Once the rescission period has passed, however, "a signed, notarized acknowledgment is considered a legal finding which may be challenged only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger." § 43-1409. "[T]he proper legal effect of a signed, unchallenged acknowledgment of paternity is a finding that the individual who signed as the father is in fact the legal father." *Cesar C. v. Alicia L.*, 281 Neb. 979, 985, 800 N.W.2d 249, 254 (2011) (even though genetic test ruled out man as biological father of child, establishment of paternity by his acknowledgment was equivalent to establishment of paternity by judicial proceeding; his complaint to establish paternity should have been treated as complaint to determine custody and support).

[10] The "legal finding" language contained in § 43-1409 related to a rebuttable presumption of paternity under an acknowledgment of paternity is not contained in § 43-1415 related to a rebuttable presumption of paternity when a genetic test shows a 99-percent probability of paternity. The rebuttable presumption language contained in both §§ 43-1409 and 43-1415 was added to both statutes in 1994. See 1994

Neb. Laws, L.B. 1224, §§ 58 and 62. However, when the "legal finding" language was added to § 43-1409 in 1997, it was not added to § 43-1415. In enacting a statute, the Legislature must be presumed to have knowledge of all previous legislation upon the subject. *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012). The Legislature is also presumed to know the language used in its statutes, and if a subsequent act on the same or similar subject uses different terms in the same connection, the court must presume that a change in the law was intended. *Id.* The Legislature could have given the same effect to a genetic test showing a 99-percent probability of paternity as it gave to a signed and notarized acknowledgment of paternity, but it did not do so. We cannot read into the statute something which is not plainly there.

[11] In summary, while a genetic test result may be evidence of paternity and can establish a rebuttable presumption of paternity, it is not in itself a legal determination of paternity in the same way as a signed and notarized acknowledgment of paternity may be. As such, the 4-year statute of limitations set forth in § 43-1411 applies to Evan's action to establish paternity. Unfortunately, despite knowing there was a 99.99-percent probability that he was N.H.'s father since at least May 2017 when genetic testing was conducted, Evan waited more than 4 years to bring a paternity action, and therefore, he is now statutorily barred from doing so.

### (b) No Exception Under § 43-1411

Evan further argues that "Nebraska law is clear that there are additional exceptions to the four year statute of limitations for a civil proceeding to establish paternity of a child." Brief for appellant at 7. He quotes from § 43-1411, which we set forth in relevant part previously, and emphasizes with boldface type the exception found at § 43-1411(1)(a)(ii), which creates an exception to the limitations period when "a county court or separate juvenile court has jurisdiction over the custody of the child." Evan offers no discussion as to why

this portion of the statute has any applicability in the present matter. As we set forth previously, there is no evidence in the record to indicate that there was any county court or separate juvenile court proceeding pending with jurisdiction over N.H. Without such a case, this exception is not applicable.

### 3. CONSTITUTIONALITY OF § 43-1411

Evan also argues that § 43-1411 is unconstitutional because it runs afoul of the Nebraska and U.S. Constitutions' guarantees of the right of parents to "direct the care, custody, and control of their children." Brief for appellant at 8. He argues that application of the statute of limitations to bar his paternity action "denie[s] his due process rights guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I-3 of the Nebraska State Constitution." Brief for appellant at 8. He also argues that § 43-1411 "sets an arbitrary statute of limitations of four years," suggesting that any time limitation on a parent's right to assert his or her right to bring a paternity action is unconstitutional. Brief for appellant at 9.

[12] Our record does not show that Evan presented this issue to the district court, at least based upon the oral arguments made at the hearing on Laura's motion to dismiss. Thus, we are not required to address the argument on appeal. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001) (issues not presented to trial court may not be raised on appeal). That said, we nevertheless point out that the Nebraska Supreme Court has previously held that § 43-1411 is constitutional because it provides sufficient time for a natural parent, whether having custody of the child or not, to assert his or her rights. See *Bryan M. v. Anne B*., 292 Neb. 725, 737, 874 N.W.2d 824, 834 (2016) (in dismissal of paternity action brought 8 years after birth of child, Supreme Court found § 43-1411 did not violate biological father's due process rights; "[r]ather than diligently and prudently attempting to establish paternity within the first 4 years after [child's] birth, [biological father] did

nothing for 8 years"). See, also, *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994) (State's petition to establish paternity more than 12 years after child's birth permitted under § 43-1411 and did not violate Equal Protection Clause of either Nebraska or U.S. Constitution).

## VI. CONCLUSION

Although for reasons different from the district court's as set forth above, we affirm the court's dismissal of Evan's complaint.

AFFIRMED.